Statement of Facts.

|144 | 95⁻|
|173 | 455|

|144 | 95|
|201 | 340|

|144 | 95|
|209 | ¹602|

|144 | 95|
|213 | ¹583|

# A. J. EDGETT v. C. L. DOUGLASS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF McKEAN COUNTY.

Argued May 6, 1891—Decided October 5, 1891.
[To be reported.]

1. When the parties to a suit in equity have submitted to the jurisdiction, taking the chances of a decree in their favor, an objection that the suit should have been at law, will not as a general rule avail, when made for the first time in the Supreme Court, unless the want of jurisdiction is so plain as to justify the dismissal of the bill of the court's own motion.

2. The grantor of land reserved in the deed therefor the right "to maintain a dam across the T. creek, where the dam now is." The reservation covered the right to maintain not only the breastwork of the dam, but also the banks at the sides of it, and to repair them if washed away, necessarily involving the right to go upon the land conveyed for the purpose of such repairs.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 388 January Term 1891, Sup. Ct.; court below, No. 4 October Term 1889, C. P. in Equity.

On June 14, 1889, A. J. Edgett filed a bill in equity against C. L. Douglass, charging in substance (1) that the defendant, without any authority, had entered upon a tract of seven acres owned by the plaintiff, for the purpose of constructing a dam to restrain the flow of Tunungwant creek and divert it from its natural course, and threatened to continue to make such entries; and (2) that the defendant was constructing a dam below the plaintiff's property in such manner as to overflow, not only said seven acres, but also another tract of the plaintiff containing thirty acres, to the plaintiff's irreparable damage; praying that the defendant be enjoined from entering on the seven acres for the purpose of changing or diverting the channels of said creek, and from maintaining said dam "other than it now is;" and for general relief.

The defendant answered the bill, denying that he had en-

tered upon land of the plaintiff at all; averring that what he did was to attempt to repair a dyke, intended to prevent the waters of the creek from leaving its natural bed and course, and a necessary part of a dam which the defendant had a right to maintain; denying that he was constructing a dam that would cause plaintiff's land to be overflowed, and denying that the plaintiff was entitled to the equitable relief prayed for.

Issue having been joined, the cause was refered to *Mr. George A. Berry,* as master, who, on December 8, 1890, filed a report wherein he found that the plaintiff was the owner of the thirty acres mentioned in the bill, by title derived from a different source from the title to the lands of the plaintiff and defendant, respectively, mentioned infra; that the defendant had no right to overflow said thirty acres except by prescription, but did have such a prescriptive right; and that the testimony upon the question whether the defendant was exceeding his right in this particular, was too conflicting to warrant the master in finding for the plaintiff.

The facts found by the master, bearing upon the other branch of the case, to wit, as to the entries charged to have been made by the defendant upon the seven acres "for the purpose of constructing a dam," etc., were in substance as follows:

The dam mentioned in the pleadings was built in 1844 by W. R. Fisher, and from that time until the purchase by the defendant of the grist-mill and water rights mentioned below, was maintained substantially in the same condition as when first erected. From 1844 to 1866 Fisher owned the dam, and the land on each side thereof. There were erected prior to 1866, on land owned by Fisher, a saw-mill, situated on the west side of the creek, and a grist-mill situated on the opposite side. Both were supplied with water from said dam. In 1866, Fisher conveyed to Henrietta Peterson a parcel of land upon which the saw-mill stood, and also the seven acres now owned by the plaintiff, the deed containing the following reservation:

"Reserving, however, to the party of the first part sufficient water to run a grist-mill on the same mill-dam, and the right at all times to maintain a dam across the Tunungwant creek where the dam now is, and the right to flow the land hereby conveyed so far as may be necessary for the use of the water privilege. The reservation of the use of the water hereinbefore

Master's Report.

made being intended to give to the party of the first part, his heirs and assigns, the exclusive use of the water power effected and produced from the said dam, so far as may be required at all times as power for the grist-mill and machinery appurtenances thereto; the party of the second part, her heirs and assigns, to have the use of so much surplus water as there may be after supplying the power required for the use of the grist-mill aforesaid. The said party of the second part having executed a bond and agreement binding herself, her heirs and assigns, to the party of the first part, his heirs and assigns, at all times to be at and pay two thirds of the cost and expense of maintaining and keeping in repair the dam across said creek, for the use of said mills, said bond and agreement is declared to be a covenant running with the land and to be at all times binding on the party or parties holding the title to or possession of the land hereby conveyed."

The plaintiff's title to the seven acres was derived, through intermediate conveyances, from Henrietta Peterson. The defendant owned at the time of the hearing the Fisher grist-mill, and had succeeded by grant to all the rights which Fisher had in the mill property, dam, water privilege and appurtenances, the same having been conveyed to him by deed of Fisher and wife, dated July 27, 1886.

As originally built, the dam in question extended across Tunungwant creek. The break, which the defendant was claiming the right to repair, was up the stream from the dam and about 150 feet above it, and with the exception of about three feet, was wholly on the tract of seven acres belonging to the plaintiff. It was contended by the defendant that, soon after the construction of the dam in 1844, a dyke extending along the stream from the dam to a point beyond the break, was built for the purpose of restraining the water from flowing over a portion of the seven acres and of thus increasing the height of the water in the dam, and it was a break in this dyke the defendant was seeking to repair.

Upon these facts, the master reported his opinion, with reference to the extent of the defendant's right, under the reservation in the deed from Fisher to Henrietta Peterson, in part as follows:

### Master's Report.

That the reservation gives the right to flow these lands is clear, but does it give to Fisher, or his vendees, any right beyond that?

Douglass claims to exercise the right to go upon this land to construct, or as he says, repair, an embankment to prevent the water from flowing over a portion of it, the right to take earth from it, a part of the corpus, to make these repairs, and by so doing increase the height of the water in the dam, and thus inflict more injury on the plaintiff. Douglass stands in Fisher's shoes. His rights must be measured by the same standard that would apply to Fisher were he still the owner.

It is too well settled to admit of controversy, that this reservation must be construed most strictly against the grantor. Fisher owned both properties, and was in a position to put into his deed, in plain terms, all that was necessary to fully protect his rights as he understood them, and what he said was simply to give him the right to flow this land and to maintain a dam *across* the Tunungwant creek *where* the same now is. He reserved no right to enter upon his grantee's land for any purpose, although this land was the subject matter of the trade. He had owned the lands and property at least from 1844 to 1866, and was in a position to know its needs; and yet his reservation is totally silent as to anything except the right to maintain the dam across the creek, making no reference to any dyke alongside the creek on plaintiff's land; and yet, if this dyke existed as claimed by the defendant, it would have been quite as prominently before Fisher's mind as the dam itself. Fisher clearly had in his mind the right to maintain the dam across the creek ; as he had conveyed the dam to Peterson in the same deed (though not a part of the seven acres) and was providing for the maintenance of the dam to use his grist-mill in case Peterson should fail to keep it up; and to properly maintain the dam across the creek as it then was, he had to enter upon the lands of Peterson in the dam itself.

The testimony is clear and uncontradicted that the break is almost entirely on the land of the plaintiff,* and the defendant

---

* There was a dispute as to the proper location of one of the lines of the seven acres, the plaintiff locating it out in the dam, and the defendant locating it along the bank of the creek. In the defendant's paper-book it was asserted that if the line were along the bank, the entry complained

in insisting upon going upon the lands for the purpose of fixing
the break, using the plaintiff's earth to do so, is in both partic-
ulars a trespasser. . . . .

The master therefore recommends that so much of plaintiff's
bill as refers to the seven acres of land described therein, be
sustained, and that the defendant, C. L. Douglass, and all
persons acting for or under him, be perpetually enjoined from
entering upon said seven acres, so described, or any portion
thereof, for any purpose whatever, but more especially for the
purpose of constructing, repairing, maintaining or renewing
any dam, dyke or embankment thereon.

—Exceptions to various findings and conclusions of the mas-
ter were overruled by him, and afterwards renewed and argued
before the court, the tenth being as follows:

10. The master erred in finding, as a matter of law, that the
reservation in the deed from Fisher to Peterson gave to Fisher
and his grantees no other right but that of overflowing the
plaintiff's seven-acre tract.[3]

On February 13, 1891, the court, OLMSTED, P. J., filed the
following opinion:

This case came on for hearing upon exceptions to the master's
report filed in the case. The only question in the case that
gives us trouble is whether the plaintiff has established his right
so clearly as to give a court of equity jurisdiction. - But the
doubts that arise do not spring from disputed facts, such as
should be determined by a jury; but the doubts, such as they
are, arise from the construction of the grants and reservations
contained in conveyances that have been given in evidence.
All these questions would have to be determined by the court
and not the jury, were the case on the law side of the court,
and the defendant is not therefore injured by being deprived
of a jury trial. We incline, however, to the opinion that the
learned master was right both in his findings of fact and law,
and the exceptions filed by the defendant's counsel are not
sustained; they are overruled and the report of the master is
confirmed.

---

of by the plaintiff would be upon ground not included in the seven acres.
The plaintiff's paper-book asserted that, in any event, it was shown by
undisputed evidence that the defendant had entered upon the seven acres,
and could not attempt to repair the break without entering thereon.

The decree recommended by the master having been entered,[14] the defendant thereupon took this appeal, specifying inter alia that the court erred:

1. In holding that the plaintiff had established his right so clearly as to give a court of equity jurisdiction.

8. In overruling defendant's exception.[8]

14. In entering the final decree.[14]

*Mr. J. M. McClure* (with him *Mr. Eugene Mullin*), for the appellant:

1. A careful consideration of the testimony will make it clear that a court of equity could take no jurisdiction of this case. To enable it to do so, the plaintiff must first show a clear legal right: Biddle v. Ash, 2 Ashm. 218; Bunnell's App., 69 Pa. 62; Rhea v. Forsyth, 37 Pa. 503; Washburn's App., 105 Pa. 480; Duncan v. Iron Works, 136 Pa. 478; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Grubb's App., 90 Pa. 229; Ferguson's App., 117 Pa. 426; McCullough v. Wainright, 14 Pa. 171. As, in this case, the testimony was conflicting with respect to the location of plaintiff's lines, leaving it uncertain whether the dyke in question is on his land, it was not a proper case for the intervention of a court of equity.

2. The master and court erred in construing the reservation in the Peterson deed as applying only to the transverse section of the dam. It is true that such a reservation must be construed most strongly against the grantor, but the construction must be reasonable and agreeable to common understanding; and where the intent is clear, too minute a stress is not to be laid upon the strict, precise signification of words: Anderson's Law D., 328; Updegrove v. Updegrove, 1 Pa. 136; Suplee v. Hansell, 17 Pa. 384; Richardson v. Clements, 89 Pa. 503. Is it not clear that the parties contemplated the maintenance of the dam just in the state it was in at the date of the deed?

*Mr. M. F. Elliott* and *Mr. G. L. Roberts* (with them *Mr. D. H. Jack*), for the appellee:

1. The question of jurisdiction was not raised by demurrer or answer, and after hearing on the merits, the court will not allow the objection to prevail, unless there is manifest want of jurisdiction: Adams's App., 113 Pa. 449; Sunbury etc. R. Co.

v. Cooper, 33 Pa. 278; Maguire's App., 102 Pa. 120.   Equity
has jurisdiction to restrain continued and repeated trespasses:
Stewart's App., 56 Pa. 413; Commonwealth v. Railroad Co.,
24 Pa. 159; Bitting's App., 105 Pa. 517; Scheetz's App., 35
Pa. 88.   The location of the plaintiff's lines was established by
the testimony beyond a doubt.   The defendant says we do not
own the land where the break is; but he makes no claim of
ownership thereto, nor does he show any title to the same in
any other person.

2. Reservations contained in a deed are construed most
strongly against the grantor: Beeson v. Patterson, 36 Pa. 24;
Klaer v. Ridgway, 86 Pa. 529; White v. Smith, 33 Pa. 186;
Allentown Sch. D. v. Derr, 115 Pa. 439.   But, without relying
upon the application of this principle, we contend that the lan-
guage of the Peterson deed indicates precisely what was in-
tended to be reserved.   There is no mention or intimation of
any other dam than the one across the creek, and it would be
an enlargement of the reservation to construe it as referring to
a dam on the seven acres.   An existing right of way cannot
be enlarged by uses not in the contemplation of the parties at
the time of its creation: Carty's App., 5 W. N. 241; Kister v.
Reeser, 98 Pa. 1; Kirkham v. Sharp, 1 Wh. 323.

3. A reservation is a grant, and requires words of inheritance.
As there are no such words in this deed, relating to the right
to repair the dam, this reservation is personal to the grantor
and incapable of assignment; and, the grantor being dead, the
right to repair falls: Suplee v. Hansell, 17 Pa. 384; Pearson v.
Hartman, 100 Pa. 84; Gray v. Packer, 4 W. & S. 17; Lemon
v. Graham, 131 Pa. 447.   The theory of the defendant, that he
has a right to use the seven acres for any purpose necessary to
enable him to overflow it, would give him unlimited control
over it, and make the reservation as broad as the grant, and
therefore void.   The right to overflow does not embrace by
implication the right to erect structures for that purpose, and
there is not one word in this deed reserving any right to enter
upon this land for the purpose of constructing and repairing the
embankment alleged to have been there by the defendant.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case involves some questions of fact which could have

been more appropriately settled at law.   Indeed, had this point been made below, we would have been inclined to sustain it. But where parties submit to the jurisdiction, and take their chances of a decree in their favor, the objection here comes with a bad grace, and will not as a general rule avail, unless the want of jurisdiction is so plain that we would feel justified in dismissing the bill of our own motion.

Aside from this, in the view we take of the case, the disputed facts are not of special importance, as it turns in a great measure upon the proper construction of the reservation in the deed of October 16, 1866, from William R. Fisher and wife to Henrietta Peterson.   The language of said reservation is as follows :

" Reserving to the party of the first part sufficient water to run a grist-mill on the same mill-dam, and the right at all times to maintain a dam across the Tunungwant creek where the dam now is, and the right to flow the land hereby conveyed so far as may be necessary for the use of the water privilege."

We think the master and the court below took a narrow view of this reservation.   Their construction of it was, in the language of the former, "simply to give him (Fisher) the right to flow this land and to maintain a dam across the Tunungwant creek where the same now is.   He reserved no right to enter upon his grantee's land for any purpose, although this land was the subject matter of the trade."   The master's view, as we understand it, was that the right to maintain the dam consisted solely in the right to keep up the breast-work *across* the creek, and to overflow the seven acres ; but he has failed to enlighten us how the dam is to be maintained if the bank by the side of the creek is washed away, so as to allow the water to escape. In such case, repairing the bank which crosses the creek would be of no avail.   In this case, there was a break in the side of the dam, and admittedly on the plaintiff's land.   This break could only be repaired by going upon the land of the latter, and it was in doing this that the alleged trespasses occurred.

It is to be observed that the reservation is " to maintain a dam across the Tunungwant creek where the dam now is;" that is to say, the right was reserved to maintain the dam in its length and breadth as it existed at the time of the reservation. This included all the banks by which the water was confined. The right to maintain the dam means the right to keep up the

Statement of Facts.

banks, and, if they are washed away, to repair them. The right to repair necessarily involved the right to go upon the land for that purpose, and must have been so understood by the parties to the reservation at the time it was made. Were it otherwise, the reservation would have been worthless, and we are not to presume that the parties intended a vain thing. We are of opinion that the defendant has the right to go upon the plaintiff's land, for the purpose of making any repairs to the bank necessary to maintain his dam.

> The decree is reversed, and the bill dismissed, at the costs of the appellee.