Sabara et ux. *v.* Macsai et ux., Appellants.

Argued December 9, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William H. Schneller,* for appellants.

No appearance or brief for appellees.

OPINION BY CUNNINGHAM, J., February 28, 1936:

This case involves the extent of an easement, described in certain deeds as a right to enter upon defendants' land for purposes therein designated. Plaintiffs filed a bill in equity asserting that defendants were interfering with their exercise of the rights granted, and praying for an injunction against such interference. The court below, after hearing and argument, granted the injunction and defendants have appealed.

The parties own adjoining tracts of land; plaintiffs' is a small farm of about 23 acres with a grist mill and other buildings erected thereon; defendants' farm is considerably larger and bounds plaintiffs' upon the east and north; the common source of title was John Farber, who operated the entire property as a farm and grist mill. The next farm to the east is referred to as the Daniel Frack tract.

In connection with the ownership of their land, plaintiffs are also the owners of the water right, title and interest in a stream known as Indian Creek, (flowing from east to west through a portion of the lands involved) as formerly vested in Farber.

Beginning near the eastern side of the original tract, a mill race was constructed, roughly parallelling the stream and running slightly north of it, to the property now owned by plaintiffs, where it supplies the power for their mill. The western end of the race is upon

plaintiffs' property but the longer portion of it traverses the land of the defendants. A public highway runs along the southern side of both properties. Approximately at the junction of this highway and the eastern line of plaintiffs' property, a private lane leaves the highway and runs in a general northerly direction to and across the race. It passes partly through plaintiffs' property and partly through defendants' until it reaches a point some 300 feet north of the mill race; it then turns in an easterly direction, parallelling the mill race, and continues to the buildings occupied by defendants.

Under the deeds from Farber and his successors in title, plaintiffs were granted a right-of-way across defendants' tract for the purpose of entering thereon to maintain, repair and clean the mill race. The pertinent provision of their deed reads:

"Together with the right-of-way of mill race through the farm, sold subject thereto and about to be conveyed. [to defendants' predecessor in title], from the dam and race on the Daniel Frack tract, adjoining the farm, to the mill property, of a width and in the direction as now located, with the right and privilege to the said Frank and Mary Sabara, their heirs, executors and assigns, with their or his workmen, horses and carts, of ingress, egress and regress, to enter at all times on said land along banks of said race for the purpose of maintaining, repairing and cleaning said mill race with overflows and outlets as at present constructed and for the purpose of so repairing shall have the privilege of taking stone and earth adjacent thereto, doing as little damage as possible.

"Party of the second part, his heirs, executors or assigns, shall be responsible for all damage which he or they may do to crops on above farm."

The deed under which the grantors of the defendants held title, as well as the deed to the defendants them-

selves, contained the provision that the land therein described was sold, "subject nevertheless," to the "water right and right-of-way" now vested in plaintiffs.

The controversy revolved around the meaning of the phrase "to enter at all times on said land along banks of said race." The contention of the defendants was that it meant that the plaintiffs or their workmen must walk or drive from the property of the plaintiffs to the scene of any break in the mill race literally along the banks of the race, and not across any other part of the property of the defendants. The theory of the plaintiffs, successfully maintained in the court below, was that while it was possible to *walk* most of the way along the banks of the race, the banks were too narrow and too uneven to permit the passage of horses or carts; and that, inasmuch as the right-of-way in the deed specifically referred to horses and carts and contemplated the efficient maintenance of the mill race, they had the right to use the lane parallelling the race as the only possible way of getting to a break.

In view of the nature of the controversy, most of the testimony was devoted to a discussion of the physical character of the banks of the race and of the land of the defendants immediately adjacent thereto. Plaintiff, together with four other witnesses, gave substantially identical testimony on this point. That of Henry H. Hower may be taken as typical. This witness testified that he was one of the grantors in the deed to the predecessor of the plaintiffs and also in the deed to defendants' predecessor in title; that he had known the property about fifty years and had charge of the grist mill farm nearly twenty years; that he was thoroughly familiar with the mill race and with the contour of the adjacent land; that there was a path from the mill all the way along the south side of the mill race, but not wide enough to allow a wagon to pass; that the path was of various widths, from three up to four or five feet;

that there were a number of trees close to the race, as well as below the bank; that on the north side of the race there were a series of elevations and swampy places; that as a result of these factors it was impossible to drive a horse or a team of horses loaded with materials along the bank or along the north side of the race; and that it was therefore necessary to use the lane and to drive the short distance across the intervening fields when repairs were required. He further definitely stated that when he had repairs to make he always used the lane, and that there was no other feasible way of getting to the point of a break. The other witnesses for the plaintiffs fully corroborated this statement; certain of them testified in addition that the top of the bank was rounded and irregular, and at points much higher than the adjacent fields.

Defendants presented two witnesses. While these witnesses stated that the mill race might be approached from a public highway on the east of defendants' property by driving across certain fields, their evidence did not contradict the contention of the plaintiffs that the banks of the race were unfit for travel. On the contrary, both of these witnesses admitted that it was impossible to drive a cart along the bank.

In view of this testimony, we are of opinion that the learned chancellor was fully justified in reaching the conclusion which he did. The question involved was a mixed one of law and fact. Defendants urged that the reservation in their deed should be construed most strictly against the plaintiffs. Apart, however, from the question whether such a rule is applicable in a case of this sort, it is obvious that the grant of the right-of-way should not be so construed as to rob it of all meaning. Both properties were once part of a single tract. It is not denied that the banks of the mill race are at the present time unfit for use by horses and carts. But in addition to this fact, the only testimony as to

the method of operation when the tracts constituted one farm is favorable to the position of the plaintiffs. Undoubtedly the chancellor gave considerable weight, and rightly so, to the testimony of Hower. It is reasonable to assume that if, before the property was subdivided, it was customary to utilize the lane as far as possible for the purpose of making repairs, it was not the intention of the common grantor to restrict the western tract to the use of the banks only. This becomes even more apparent when the condition of the land immediately adjacent thereto is considered.

The adjudication did not amount to a departure from the words of the grant. Its real effect was to construe that grant reasonably in the light of the actual conditions on the ground and the long-continued customs of previous owners. If the deed had given to the plaintiffs merely the right to maintain the mill race, this would necessarily have included the right to go upon servient land for the purpose of making repairs, even without a specific grant of such right in the deed: Edgett v. Douglass, 144 Pa. 95, 22 A. 868. Consequently plaintiffs would have been entitled to utilize the lane if it was the only practicable means of reaching the point of a break in the race. We do not think the addition of the words "along banks of said race" restricted such right. In the light of all the circumstances, we are of opinion their real meaning is that the owner of the right-of-way may go on the lands through which the mill race runs and may work on and along its banks for the purpose of cleaning it and making repairs. Any abuse of this privilege can always be controlled by the chancellor, as the matter will remain within his jurisdiction.

It is further contended that the grant should not be unduly enlarged merely because it is more convenient or less expensive for plaintiffs to use the lane rather than the bank. This contention, however, does not

square with the facts. There was never any road along the top of the bank. The question therefore is not one of convenience, but one of necessity. Were plaintiffs compelled to construct a road at the present time on top of the bank, sufficient to carry a horse and cart, this would place an unreasonable burden upon them, and one out of all proportion to the value of the right-of-way. In addition, it would mean in fact a greater interference with the property of the defendants; under the construction herein approved the necessary repairs can be made with a minimum of inconvenience to all involved.

The contention is also made that the evidence concerning the alleged interference with plaintiffs' use of the lane is too indefinite to warrant the granting of an injunction. However, the court below found that on a certain day defendants had refused to permit plaintiffs to pass along the lane and had obstructed it with an automobile, a wagon, and a tree, and in addition had dug a ditch across it. It was also in evidence that both of the defendants had ordered workmen to stop when they attempted to travel upon the lane to the scene of proposed repairs. We think these circumstances were sufficient to sustain the action of the court below. It is not necessary to the issuance of an injunction that actual hostilities should have occurred, particularly where the defendants, as here, do not go on the stand to explain away the natural inferences flowing from their actions.

Decree affirmed at costs of appellants.