# Mifflinville Bridge.

*Railroads—Crossing of highways—Judicial supervision—Act of June 7, 1901.*

Since the passage of the Act of June 7, 1901, P. L. 531, every grade crossing, whether of one railroad by another, or of a highway by a railroad, comes before the court with a heavy burden of proof upon it.

The fact that a grade crossing of a railroad over a highway is incidental to the relocation of an existing highway under the act of 1836, does not relieve such crossing from the ban of the first section of the act of June 7, 1901, which provides that "all crossings hereafter established" shall be above or below grade.

The provisions of section 4 of the act of June 7, 1901, which authorizes the court of common pleas to permit grade crossings under certain conditions, must be strictly followed, and there is no substitute for them either in manner or form. Previous proceedings in the quarter sessions, although before the same judge, cannot be considered as a substitute for the proceedings provided for in section 4.

On a petition under section 4 of the act of June 7, 1901, to locate a grade crossing of a railroad over the approach to a county bridge, it was alleged that the duties of the county commissioners ended at the bridge, and that the railroad tracks were so far from it that the construction of the crossing would be the work of the township authorities who were not before the court. The court dismissed the petition on the ground that prior proceedings in the quarter sessions under the act of 1836 were conclusive. *Held*, on appeal, that the decree should be affirmed, not for the reason stated by the court, but by reason of the questions of fact raised, and that the appellant should be turned over to the more plastic and convenient remedy of a bill to enjoin the construction of the bridge in such manner as would require the highway to cross the railroad at grade.

It seems that on an appeal from a decree dismissing a petition filed under section 4 of the act of June 7, 1901, that the appellate court, following the analogy of the rule in equity, may consider the reasons given by the lower court for its action.

Argued June 1, 1903. Appeal, No. 116, Jan. T., 1903, by defendant, from decree of C. P. Columbia Co., dismissed petition to regulate grade crossing in case of Mifflinville Bridge. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Petition under section 4 of the act of June 7, 1901, to regulate a grade crossing.

LITTLE, P. J., filed the following opinion:

This is a proceeding instituted by the county commissioners under the act of 1901, section 4, which by its terms became effective on June 1, 1902.

The petition recites that under certain proceedings had in the court of quarter sessions for the location of a county bridge across the Susquehanna river at Mifflinville, the proceedings of such county bridge were confirmed absolutely on July 7, 1902.

The petitioners further aver in their petition that the southern end of the bridge crosses the tracks of the Pennsylvania Railroad Company. It also recites further proceedings had by the county commissioners for the construction of the bridge and other matters; and prays for the court to make an order to establish a grade crossing of the railway and for gates, signals and other safeguards to be maintained by the railroad company; and assigns nine separate reasons why the court should make the order asked.

Answer was filed by the Pennsylvania Railroad Company, respondents, and a hearing was had. Upon the hearing testimony was offered on the part of the petitioners respecting the desirability and the necessity of a crossing at grade of the right of way of the railroad company. The respondents offered testimony as to the desirability for an overhead crossing.

From the evidence produced at the hearing it appears that on July 29, 1902, the commissioners entered into a contract with one Charles H. Reimard for the construction of the bridge and the approaches thereto as far as the wing walls, and that the same be completed by August 1, 1903, for the price of $93,985. The contractor is actively engaged in the construction of the bridge.

The proposed bridge is so designed as to meet the highway on either side of the river at grade. In order to do this, the floor at the southern or Mifflinville end of the bridge will be six feet or more higher than the floor at the northern abutment. The respondent's proposed plan for an overhead crossing of the tracks of their railroad, affording nineteen feet in the clear above the level of the tracks at the point, involves an addition to the height of the piers of the bridge as already planned and contracted for, by the addition of steel cylinder

piers three eighths of an inch in thickness, securely fastened to the piers as designed, and to be filled with concrete, and the floor of the bridge placed upon an incline from the northern to the southern abutment. The addition added to the southern pier will be some eighteen or more feet in height; and also the construction of an additional pier on the south side of the railroad company's right of way. That the increased cost of the construction will be some $16,300, of which sum the respondents have offered to the county commissioners to contribute the sum of $12,000.

We are of the opinion that the act of 1901, under which this proceeding was instituted, has no application to the facts here. The purpose of the act was not to abolish all grade crossings. The act is entitled: "An act relating to railroad crossings of highways, and for the regulation, alteration and abolition of grade crossings, except in cities of the first and second classes." Its first section provides: "That, except as in this act elsewhere provided, all crossings, hereafter established, whether of highways by railroads or of railroads by highways, shall, except in cities of the first and second classes, be above or below the grade thereof." The second section relates to railroad companies constructing new lines of railroad. And the third section provides: "Every municipality or other authority, hereafter constructing a highway, .... across an existing railroad, shall construct the same above or below the grade thereof, unless permitted, in the manner hereafter provided, to construct the same at grade, and the cost of said work shall be paid one half by said municipality and one half by the railroad company owning said railroad." Its fourth section provides: "Whenever it shall be desired by any railroad company, constructing a new railroad, or by any municipality or authority, constructing a new highway, except in cities of the first and second classes, that the railroad or highway should be so constructed that the railroad and highway shall cross each other at the same grade, a petition shall be presented by the party desiring such construction to the court of common pleas of the district within which said crossing is situated, upon ten days' notice to the corporation owning said railroad or to such municipality or authority, describing the proposed construction, and setting forth the reasons that are supposed

to make the same necessary and desirable; and the court of common pleas shall thereupon have jurisdiction of the parties and the subject-matter of such petition, and may proceed summarily or otherwise, and upon such notice as it shall deem sufficient, to examine the matter, either by evidence, by reference to a master or commissioners, or otherwise, and if satisfied that such construction is reasonably required to accommodate the public or to avoid excessive expense in view of the small amount of traffic on the highway or railroad, or in view of the difficulties of other methods of construction, or for other good and sufficient reasons, then it shall make an order or orders permitting such crossing at grade to be established; and it may, in such orders, in its discretion, prescribe what gates, signals or other safeguards shall be maintained by the railroad company, in addition to the signals and safeguards prescribed by the statute; and all such orders shall be binding upon the parties, and shall be observed by them; all costs and expenses of the proceedings shall be ascertained and allowed by the court of common pleas, and shall be paid by such party as it shall decide, or be by it apportioned between the parties, and may be collected by execution out of said court." The tenth section of the act briefly provides that "nothing in this act shall prevent any railroad company from laying additional tracks on crossings previously existing, or from constructing switches and sidings and branch lines from their lines of railroad, now or hereafter constructed, to any mill, factory or other manufacturing establishment, . . . . or from laying additional tracks to increase their yard facilities at terminal or other points, across public highways at the grade thereof, outside of the corporate limits of cities of the first and second classes; but such sign posts and signals shall be employed for the protection of such crossings as are by law prescribed for railroad crossings of public highways."

It will be observed that this act relates to crossings hereafter established, first by railroad companies constructing new lines of railroad and any municipality hereafter constructing a new highway; while the tenth section allows crossings at grade of highways by railroad companies as mentioned in that section. There is nothing in the act which in any way interferes with the jurisdiction of the court of quarter sessions under the act of 1836. The jurisdiction of the court under that act could

not be interfered with except by some express legislative provision.

The proceeding for the location of this Mifflinville bridge was not a proceeding for the location of a highway under general law; but for the location of a county bridge to connect parts of an existing highway under the 35th, 37th and 38th sections of the act of 1836.

A petition was presented to the quarter sessions, asking for the appointment of viewers for the location of a bridge "over the north branch of the Susquehanna river . . . . at a point where said river crosses the public road or highway leading from a point in the public road between Bloomsburg and Berwick, near the village of Willow Grove, to the village of Mifflinville."

At the next February sessions, 1901, the viewers made report in favor of the bridge, and under the powers conferred upon them by the 37th and 38th sections of the act, they further reported: " That we have carefully examined the routes of the road crossing the said river over which the bridge is prayed for, and are of the opinion that the changes or variations in the bed of the said road would be an improvement and saving of expense in the erection of said bridge, which variations we have caused to be accurately surveyed and have returned a plot thereof with this our report, said change being as follows: ". . . . at the southern end of said proposed bridge, beginning at a point in the northern line of First street in the village of Mifflinville 270 feet west of the western line of Market street; thence across the village common north twenty-one degrees, west 139 feet to the right of way of the N. & W. B. R. R. Company; thence crossing said right of way at grade north twenty-one degrees, west 130 feet to the southern abutment of said bridge, said abutment standing on said commons at high-water mark."

The viewers were authorized to make that change in the highway. The statute gives the bridge viewers authority to report also whether any change in the course or bed of the road to be connected therewith will be necessary, in order to the erection of said bridge at the most suitable place or in the best manner, . . . . and cause every such variation to be accurately surveyed, etc.: Sections 37 and 38, act of 1836.

There is no ground for the contention now made that the road, as shown by the draft accompanying the report of viewers, from First street in Mifflinville to the southern abutment of the proposed bridge, is a new road. The case "In re County Bridge, 24 Atl. Repr. 695," was one in which the viewers exercised the powers of changing the bed of the highway, as was done by the viewers in the present proceedings. The second exception to the report of viewers there alleged that the viewers unlawfully laid out two entirely new roads and vacated no part of the old highway. The exceptions were dismissed, and the report confirmed absolute. The order was affirmed by the Supreme Court.

This action of the viewers did not lay out a new or additional public road, or establish a new or additional grade or other crossing of the tracks of the railroad company. The result of their action on the south side was to change the bed of this previously existing road, leading from the village on the south side of the river to the north village on the north side, where it intersects First street in Mifflinville, westwardly far enough to be in line with the southern abutment of the proposed bridge.

In this highway between the two villages there has been a grade crossing for a number of years. Probably it was located and constructed when the railroad company laid its tracks at the grade of that highway; and when the bridge viewers made this change in the bed of the road, the crossing was thereby changed as a necessary incident to the use of the highway as changed. The words employed by the viewers, "Thence crossing said right of way at grade," have no special significance. They are rather descriptive of what the viewers saw as forming part of the highway.

While a county bridge is a part of the highway yet this act of 1901 does not require an over or under crossing where, as in this instance, a grade crossing has long since been in use in the highway, parts of which the bridge was designed to connect.

The judgment of confirmation absolute of these bridge proceedings July 7, 1902, became conclusive, unless appeal was duly taken. The bridge was established by that decree.

The duty devolves upon the county to build and keep this and all other county bridges in repair, as well as the approaches

thereto. The approach to the bridge is a part of the bridge itself. The township road terminates where the approach begins: Catawissa and Main Twp. Road, 17 Pa. Superior Ct. 21; Westfield Boro. v. Tioga County, 150 Pa. 152.

This road leading from the village on the south to the north side of the river, the bed of which is changed, will be required to be taken care of by the supervisors of the respective townships, as formerly.

It is a mistaken view urged on the part of the petitioners that the southern approach of this bridge extends to First street.

Being of the opinion that the decree of the court of quarter sessions confirming these bridge proceedings is now conclusive, and in view of what the county commissioners have done subsequent to that decree, that certain rights of the contractor have attached, we should feel reluctant to make any changes in the construction of this bridge, unless great necessity required it, even if there were a statute which expressly provided for such change.

The respondent's proposition involves a change in the proposed construction as already planned and designed. By reference to the testimony of Oscar Thompson, a witness produced by the respondents, this change would appear to be of doubtful propriety.

The respondent's proposed change of this bridge, so as to accommodate an overhead crossing, would greatly enlarge the bridge, and increase the cost of its construction. It has been held that " where a bridge is to be enlarged or improved, viewers should be appointed as for a new bridge : " 3 Delaware County Rep. 165.

The circumstances here show that the 2d section of the act of April 11, 1848, would present another barrier to the accomplishment of such purpose, because the contractor and county commissioners have not agreed to the proposed alteration.

The point of crossing of the railroad company's right of way can be observed for quite a distance eastwardly, and at a much greater distance westwardly.

The court of common pleas will make no order which will in any way affect the judgment of the court of quarter sessions entered July 7, 1902. And therefore, for the reasons hereinbe-

fore given, it is now ordered that these proceedings be dismissed, at the cost of the county of Columbia.

*Error assigned* was decree dismissing the petition.

*H. M. Hinckley*, with him *L. E. Waller*, for appellant.

*Herring* and *J. B. Robinson*, for appellee, filed no paper-book.

PER CURIAM, June 2, 1903 :

The settled policy of this state, legislative and judicial, is against the further increase of grade crossings. The act of June 19, 1871, gave the courts jurisdiction over crossings of one railroad by another at grade, and this court has more than once expressed its regret that the control did not extend to the crossing of a railroad and an ordinary highway. This control the act of June 7, 1901, has now given. Any grade crossing which thereafter comes before the court, comes with a heavy burden of proof upon it.

Under the conceded facts the crossing involved in this controversy is a new grade crossing and as such is prohibited by the act of 1901. The fact that it is incidental to the relocation of an existing highway under the authority of the act of 1836 does not relieve it of the ban of the act of 1901. The language of section first of the latter act is that "all crossings hereafter established" shall be above or below grade. This is a crossing in a different place, and is, therefore, "established" after the date of the act.

The command of section first is peremptory and universal except in the single instance specifically prescribed. The court of common pleas is authorized under section four to permit a grade crossing under certain conditions. But this jurisdiction must be exercised in the mode pointed out by the statute and is exclusive. There is no substitute for it, either in manner or form. The proceedings in the present case in the quarter sessions to authorize the bridge and the relocation of the old highway were wholly irrelevant. They were in a different court having no jurisdiction over this subject and the accidental fact that both courts were held by the same judge did not mingle or combine their separate jurisdictions. The discretion

of the common pleas under the statute can only be exercised in a direct proceeding for the purpose in the proper court.

A technical objection to a review of the decree is based on the ground that the appellant in its answer asked that the petition be dismissed and that the prayer was granted. With the reasons given by the court in its opinion it is said we have no concern. This point is not free from difficulty. In an action at law the opinion of the court is not part of the record and the judgment is the only matter strictly reviewable. In a proceeding in equity the rule is otherwise, and the chancellor's reasons are proper subject of consideration. The proceeding in the present case was unknown to the common law and the statute by committing it to the discretion of a judge who may proceed summarily in such manner as he thinks best, and by the latitude of powers with which it invests him, and in other ways, has assimilated it closely to a proceeding in equity. Whether, therefore, we might not take up the case as if upon an appeal in regard to an injunction is far from clear. But some questions have been raised as to the facts. It is said that the duties of the county commissioners end at the bridge and the railroad tracks are so far from it that the construction of the crossing will be the work of the township authorities who are not before us. Under these circumstances we have thought it best, without deciding the other question, to turn over the appellant to the more plastic and convenient remedy of a bill to enjoin the construction of the bridge in such manner as will require the highway to cross the railroad at grade.

This appeal is, therefore, dismissed without prejudice.