## Pennsylvania Railroad Company, Appellant, v. Bogert.

| 209 | 589 |
| 28 SC | ¹326 |
| 209 | 589 |
| e213 | ⁸582 |
| 29 SC | ⁸621 |
| 209 | 589 |
| f 36 SC | 358 |

209    589
39SC 378

*Statutes—Repeal—Substitute.*

A subsequent statute revising the subject-matter of a former one and evidently intended as a substitute for it, although it contains no express words to that effect must operate to repeal the former to the extent to which its provisions are revised and supplied.

*Statutes—Repeal—Grade crossings—Railroads—Highways—Acts of June 13, 1836, P. L. 551, and June 7, 1901, P. L. 531.*

The Act of June 7, 1901, P. L. 531, repealed the Act of June 13, 1836, P. L. 551, in so far as the latter related to highway crossings of a railroad at grade.

The act of June 7, 1901, transferred from the quarter sessions to the common pleas jurisdiction of the crossings of railroads over highways. If at the time the act of 1901 went into effect, proceedings were pending in the quarter sessions, such proceedings became a nullity.

*Road law—Railroads—Grade crossings—New crossing.*

The crossing of a highway leading from a bridge in course of construction over a railroad near the exit from the bridge will be considered a crossing "hereafter established" within the meaning of the Act of June 7, 1901, P. L. 531, where it appears that although there had been a crossing over the railroad by a road leading from an ancient ferry, the contemplated crossing was not only in a different place on the tracks, but was intended to accommodate more people.

A court of equity will under the Act of June 7, 1901, P. L. 531, enjoin the construction at grade over a railroad of a highway leading from a county bridge, where it appears that the proposed crossing was at the foot of a hill, at the entrance of the railroad shifting yard near a water tank and station, that ten passenger trains and more than twenty freight trains passed the point every twenty-four hours; that the travel to the station on the crossing would be largely increased by the completion of the bridge, and that an overhead crossing could be easily made at an increased cost of only $4,000 to the county.

*Equity—Remedy at law—Road law—Railroads—Act of June 7, 1901, P. L. 531.*

A bill in equity to regulate the crossing of a highway over a railroad will not be dismissed on the ground that there is an adequate remedy at law by petition under the Act of June 7, 1901, P. L. 531, where it appears that there are several distinct parties all necessary to the litigation, whose rights, duties and obligations are not clearly defined.

To induce equity to refuse its aid to a suitor, it is not sufficient that he may have some remedy at law. An existing remedy at law to induce equity to decline the exercise of its jurisdiction in favor of a suitor, must be an adequate and complete one. And when from the nature and complications of a given case, its justice can best be reached, by means of the flexible machinery of a court of equity, in short where a full, perfect and

complete remedy cannot be afforded at law, equity extends its jurisdiction in furtherance of justice.

While objection to the jurisdiction can, generally, be made at any stage of the proceedings, objections to the jurisdiction of equity on the ground that proceedings should have been instituted on the law side of the court will not be entertained, unless made within a reasonable time after bill filed. Such objection should be taken advantage of by demurrer.

Argued April 12, 1904. Appeal, No. 270, Jan. T., 1903, by plaintiff, from decree of C. P. Columbia Co., Sept. T., 1903, No. 3, dissolving injunction in case of Pennsylvania Railroad Company v. William Bogert, George W. Sterner, W. H. Fisher, Commissioners of Columbia County, and Samuel Knecht and William J. Hosler, Supervisors of Mifflin Township, Charles Reimard, Contractor, and the King Bridge Company, Subcontractor. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity for an injunction. Before LITTLE, P. J.
The case is stated in the opinion of the Supreme Court.

*Error assigned* was decree dissolving injunction.

*H. M. Hinckley*, with him *L. E. Waller*, for appellant.

*J. B. Robison*, for the commissioners of Columbia county.

*Grant Herring* and *Willard, Warren & Knapp*, for King Bridge Company.

OPINION BY MR. JUSTICE DEAN, October 10, 1904:

It is impossible to gather a clear chronological history of this case from the jumbled-up records in the paper-books before us. It seems, there were proceedings in the court of quarter sessions to No. 7, December sessions, 1900, whereby the county commissioners were authorized to construct a county bridge across the Susquehanna river at Mifflinville in Columbia county. We gather from the paper-book in No. 114, January term, 1903, that the viewers and reviewers appointed by the quarter sessions reported in favor of a grade crossing at the southern approach thereto. Confirmation of this report was resisted by the railroad company but it was confirmed absolutely by the court of quarter sessions on July 7, 1902.

Then on March 2, 1903, the county commissioners petitioned the court of common pleas, under the Act of June 7, 1901, P. L. 531, to direct a grade crossing of the railroad tracks under the provisions of that act because the last named act went into effect before the decree of confirmation absolute was made in the court of quarter sessions of the report of bridge viewers, and setting out as reasons for directing a grade crossing under the later act, the facts reported by the viewers and reviewers in the court of quarter sessions. To this the railroad company filed answer, that no necessity for a grade crossing existed; that an overhead crossing could easily be made at but little additional expense. The court below in opinion filed, declared that the decree of confirmation absolute in the court of quarter sessions was conclusive on both parties, and therefore directed that the petition in the common pleas under the act of 1901, be dismissed at the costs of the petitioners.

From this order, in effect refusing an overhead crossing under the act of 1901, the railroad company appealed to this court. The case was heard at June term, 1903, at Harrisburg. See 206 Pa. 420. Unfortunately, the hearing developed that to end by final decree the litigation, certainly one party in interest and possibly three had not been made parties to the suit and that we could make no decree binding on all until all had an opportunity to be heard, we therefore expressly declined to decide the merits of the case, but after giving our views as to the true intent and meaning of the act of 1901, we further said: " Under these circumstances we have thought it best without deciding the other question to turn over the appellant to the more plastic and convenient remedy of a bill to enjoin the construction of the bridge in such manner as will require the highway to cross the railroad at grade. This appeal is therefore dismissed without prejudice."

When it is noticed that the court below in its opinion filed refusing a decree for a grade crossing gave as its controlling reason that the act of 1901 had no application, because the proceedings in the court of quarter sessions were conclusive and determined that the crossing was made under act of 1836, our decision, that this was a new grade crossing and if allowable at all must be allowed under the act of 1901, was, in effect, giving a binding construction to the act of 1901. It is a

prohibitory act intended to discourage and abolish grade crossings; its wholesome effects are not to be frittered away and nullified by any intense desire of a particular local sentiment in a community favorable to a much needed public convenience; a local sentiment which is often regardless of the general public and reckless as to grave consequences in the future.   It is a law on the statute book to be heeded by all and especially by courts to whom is confided the grave duty of enforcing obedience to the laws according to their true intent and meaning.

In July, 1903, the railroad company filed this bill in equity against the county commissioners and the other defendants to restrain by injunction the construction of the grade crossing. After hearing, a preliminary injunction was awarded.   It had been in force some weeks when the supervisors were heard on their application for grade crossing under the act of 1901. On hearing, the court, on October 26, 1903, granted in opinion filed their application for a grade crossing and the same day dismissed the railroad company's bill for an injunction.   From both decrees the railroad company has appealed.

We will first pass on the appeal from the decree dissolving the preliminary injunction and dismissing the bill, for the court so blends the facts and reasons in both proceedings that this decree is, practically, a consequence of both.   Besides appellant at our suggestion, when the controversy was first before us, adopted this method of proceeding, which at the time we thought and still think, the most appropriate one for settling the dispute.   Nor was it at all improper for the parties to submit in this case the testimony taken in the other cases before the same judge, nor for him to consider his findings of facts and conclusions of law in framing the present decree. But in so doing he has made it necessary for us in reviewing him to follow the same course.

We have seldom had occasion to notice a case where so much time and labor have been expended by counsel and court on either wholly immaterial questions or on those purely incidental to the main issue; such as the purely collateral question whether the railroad company had an indefeasible right to land upon which its tracks were laid and of which it had been in undisputed possession for nearly a quarter of a century,

or whether it was estopped from contesting the right of the county to a grade crossing when the company as a common carrier had transported for a contractor part of the material out of which the bridge and crossing were to be constructed and like wholly collateral and trivial questions. The real question here, and the one on which a decision depends, is, ought the highway under the act of June 7, 1901, to cross the tracks of this railroad at grade? The court below, February term, 1903, after hearing on petition of the county commissioners, decided that it had not, because it had decided in another court that it had; on appeal from that decree to this court on June 3, 1903, we in effect approved of that refusal but for very different reasons; so far as concerned the parties before the court, we on a technical objection sent the case back, that the township authorities and all others interested who were not parties, might in equity be heard. When this bill was filed and the case came again before the court below, with the addition of the township supervisors and contractors as parties, the court made a wholly opposite decree to the first one for other reasons, and authorized a grade crossing.

Plaintiffs aver that defendants are about to cross the railroad tracks at grade under the provisions of the Act of June 7, 1901, P. L. 531, and then in the seventh paragraph of the bill aver:

"That said proposed grade crossing is at the foot of a hill and across the throat of plaintiff's railroad yard, where the shifting of trains and drilling of cars keeps said track in more frequent use, and close upon its railroad station and water tank, and if constructed, would be very dangerous to the public whether traveling upon the highway, or upon this portion of the railroad, over which ten passenger and more than twenty freight trains of very great length pass daily."

In the face of the previous proceedings in the case, it is hard to treat the answers of the township supervisors with patience, because they are so manifestly evasive. This is the substance of the supervisors' answer:

"For further answer your respondents say that as supervisors aforesaid, they are not interested, nor have they taken any part in the construction of the bridge mentioned in plaintiff's bill; neither have they nor are they about to construct

any approach thereto from the south in such a manner that the said highway will cross plaintiff's railroad at grade."

This answer was filed the 8th of August, 1903, the bridge being then in process of construction and planned with approaches across the railroad tracks. In about a month thereafter, the same supervisors presented a petition to the court to authorize a grade crossing, that it was necessary and that it was their duty to construct it.

The county commissioners in their answer to this seventh paragraph, deny the statements therein, but aver that: "They have no duty to perform with respect to the railroad crossing or the making of a highway beyond the bridge," while in a former petition they had asked authority to construct a grade crossing. On proper exception filed to these answers, the court might have ordered defendants to more particularly answer, or in default thereof, have ordered the bill to be taken pro confesso and have made decree accordingly. But the railroad company filed no exceptions; instead it joined issue and we suppose, to speed a final hearing, put the case on the trial list.

As already noticed, when this equity proceeding was commenced, the report of bridge viewers in the court of quarter sessions had been confirmed, to wit on the 7th of July, 1902, but the act of the 7th of June, 1901, was then a law upon the statute book and by its terms took effect June 1, 1902.

The final decree and most of the proceedings in the quarter sessions case were made after the act of 1901 had become a law. In so far as concerned highways and bridges crossing railroads, both are general acts relating to the same subject and the older act is clearly modified by the later one. By the act of 1836 the court of quarter sessions had power to change the course of a road so as to suit the location of a new bridge; but no such power is given that court by the act of 1901 where such change involves the crossing at grade of the tracks of a railway; that power is expressly given the common pleas by the last act and all the details for its exercise pointed out. This particular power of authorizing grade crossings of railroads no longer exists in the quarter sessions by the act of 1901. Notice the scope of the third section of that act:

"Every municipality or other authority hereafter constructing a highway . . . . across an existing railroad shall construct

the same above or below the grade thereof, unless permitted in the manner hereinafter provided to construct the same at grade."

And the manner hereinafter provided is set out in section 4, by petition to the common pleas, which shall by evidence, by appointment of commissioners or otherwise satisfy itself that such construction is reasonably required. When this act went into effect, before final decree in the quarter sessions, it practically suspended all further proceedings in that court, and the court, which it must be assumed had full knowledge of the law, should have so declared. The new statute, so far as it related to the highway crossings of a railroad at grade, was substituted for the old and the quarter sessions had no longer jurisdiction in that particular; its proceedings therefore became a nullity. " A subsequent statute revising the subject-matter of a former one and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied : " Commonwealth v. Cromley, 1 Ash. 179 ; Stoever v. Immell, 1 Watts, 258 ; North Canal Street Road, 10 Watts, 351, and many subsequent cases. Therefore, we hold these proceedings cannot be sustained under the act of 1836.

Was the decree one that should have been made under the act of 1901 ? As is wisely said by the present chief justice when the same case was before us last year :

" The settled policy of this state, legislative and judicial, is against the future increase of grade crossings. The act of June 19, 1871, gave the courts jurisdiction over crossings of one railroad by another at grade, and this court has more than once expressed its regret that the control did not extend to the crossing of a railroad and an ordinary highway. This control the act of June 7, 1901, has now given, any grade crossing which hereafter comes before the court, comes with a heavy burden of proof upon it.

" Under the conceded facts, the crossing involved in this controversy is a new grade crossing and as such is prohibited by the act of 1901. The fact that it is incidental to the relocation of an existing highway under the act of 1836 does not relieve it of the ban of the act of 1901. The language of

section first, of the latter act is that ‘ all crossings hereafter established ’ shall be above or below grade. This is a crossing in a different place, and is, therefore, ‘ established ’ after the date of the act.”

This is a new grade crossing. It is true, an ancient ferry had a landing a short distance below the bridge and the passengers crossed the tracks some on foot and same by vehicle but the contemplated crossing was not only in a different place on the tracks but was intended to accommodate more people ; it was in every reasonable sense a new one and not a mere perpetuation of an old one. So that it was fairly within the meaning of the act a crossing “ hereafter established,” and therefore controlled by the provisions of the act of 1901. There was an agreement of counsel, filed in a companion case to this equity suit and argued here with it to admit in evidence the proceedings in County Commissioners v. Penna. Railroad, which proceedings related to the same crossing ; also both court and counsel have used almost indiscriminately the proceedings and facts developed in the second suit, Supervisors of Mifflin Township v. The Penna. Railroad Co. in their argument and opinions in this suit, therefore we, in justice to them, must follow in the use of the same material ; indeed it is proper that we should all do so for the cases are so blended that we could not otherwise intelligently consider the law and the evidence. As we have shown this bill is properly filed under the act of 1901. The two most important averments of plaintiff’s bill are the seventh and eighth ; the seventh we have heretofore quoted, averring the dangerous character of the proposed grade crossing ; the eighth is as follows :

“ That at the very place of said proposed grade crossing the high ground, along whose base at the edge of the river bank plaintiff’s railroad is laid, affords a most advantageous opportunity for an overhead crossing to the level of the village street, which is about eighteen feet higher than the plaintiff’s railroad tracks, and 170 feet distant therefrom across the village common, said street being upon about the same level as the Berwick road with which said bridge connects, some 500 feet from its northern end.”

First are the averments of the seventh paragraph of the bill true ? The learned judge has found they are not. We think

they are. The proposed crossing is at the foot of a hill; there is no conflict in the evidence in this particular; any one of ordinary observation is aware that to descend upon railroad tracks from an ordinarily steep highway is more dangerous than to ascend to such tracks or even to cross them at a level, for teams cannot so easily hold back the vehicle nor can the driver so easily control the team. Then at the other side the traveler emerging from the bridge is immediately on the railroad tracks. That the exact place of the proposed crossing is an obstruction in conducting the railroad business clearly appears; it is just at the entrance of the railroad shifting yard, near the water tank and station, the one much used by the railroad all through the day, the other by the public. Ten passenger trains and more than twenty freight trains pass over these tracks every twenty-four hours. The extent of the travel to the station on the crossing will be largely increased when the bridge is completed and in use by the public. The Susquehanna river cuts the county in two nearly equal halves; it has a population of about 64,000; the nearest bridge above this one is at Berwick five miles up stream; the nearest below is at Bloomsburg eight miles. It is obvious that even at present the ordinary use of the bridge by the numbers who would find it necessary or convenient to use it would be very large. The numbers of those using such a bridge would probably annually increase. But to establish the extensive use of such a bridge and the crossing which would be practically a part of the same, we need not look further than the opinion of the learned judge himself in his decree of July 7, 1902, confirming the report of the viewers in which he says: "The bridge when constructed will be a necessary public improvement. It will be more appreciated if it be built so commodious, strong and substantial that the people can pass rapidly over it with their horses and burdens. In view of the legislation giving to street railway companies the right of occupancy of the bridge in certain instances it would seem to be a reasonable precaution that the piers for the bridge should be built sufficiently long and of such a degree of strength and durability, so as to accommodate not only a wide superstructure for the bridge, but also for any other use now authorized by law." And this was the kind of bridge which was authorized and which the commissioners seek

to build with a crossing over the railroad tracks only thirty to forty feet distant from the exit of travel over the bridge, a bridge not only commodious enough for present travel, foot passengers, horses and vehicles, but for street cars. Such a grade crossing would not only obstruct traffic on the railroad, but would be a constant menace to the public. There was considerable oral evidence, to some extent contradictory, as to the element of danger in such a crossing. Most of the witnesses called by the county had opinions based on theories such as the comparatively limited use that would be made of the bridge and crossing and that the view of the railroad in either direction was not much obstructed. Quite a number of thoroughly experienced railroad men testified that in their opinion the crossing would be highly dangerous. But without regard to mere opinion, the established conceded facts warrant no other conclusion than that it would prove a perilous crossing. A demand so importunate as to induce the county officers to construct a bridge at a cost of $96,000, the grand jury to approve, the court to confirm, shows of itself that the completion of the structure would be followed by a very extensive use. Besides, the location of the bridge in a somewhat populous county over a considerable river, the only bridge in an interval of thirteen miles, further demonstrated the extent of the use. It could not be used without at the same time also establishing a crossing and to establish a grade crossing would establish a constant peril to the public. We think the learned judge of the court erred in not so finding and affirming the seventh paragraph of plaintiff's bill.

As to the eighth paragraph which avers that an overhead crossing could be easily made at a comparatively moderate expense, we think that should also have been affirmed as a fact. The policy of the commonwealth and this court with reference to grade crossings has been frequently and in no uncertain terms announced. It is, that the murderous grade crossing must go. It would seem to be intimated in the argument of counsel for appellees that the proper construction of the act of 1901 is, that it is an enabling act, to facilitate grade crossings of railroads by highways. We are of a wholly different opinion; it is a prohibitory act. Perhaps, in the absence of the act of 1901, under a liberal interpretation of the act of

1836, this crossing might have been constructed; but the act of 1901 so far as relates to grade crossings of railroads has taken its place.   Unless the particular case comes under the special provision of that act, the party whether supervisors, county or railroad company, petitioning for a grade crossing, has no standing in court, and then as the Chief Justice remarked in the former case, the party comes with a heavy burden of proof.   And so he should.   When he asks to construct for public convenience, what in all probability will prove a death trap to few or many of the public, he should be able to show clearly, as we said in Pittsburg, etc., Railroad Co. v. Southwest Penna. Ry. Co., 77 Pa. 173, an "imperious necessity" for such crossing.   It is not enough to make out serious inconvenience to the public if the crossing be not authorized; courts will not stop to compare and calculate the value of life and limb and weigh that value against a loss to the public by inconvenience; nor will they weigh that value against a few thousand dollars additional expense and call the latter excessive, but that is just what the court did here when it ruled: "The only way to provide for a crossing over the railway is either by granting this application for permission to construct a crossing at grade, or by the alteration of this nearly completed bridge in accordance with the plans of respondent." The additional expense involved in the alteration was what impelled the court to overrule the eighth averment of plaintiff's bill.   This additional expense was $16,300; it would have compelled the county to elevate the superstructure by raising the stonework of the piers; the railroad company offered to pay two thirds of this sum; this would have made the cost of alteration to the county in the plans about $4,000.   It is argued that the company might have refused to pay the money; but the offer was formally made at the hearing and the court by proper order could have compelled compliance with it.   The overwhelming testimony of competent engineers clearly shows that a change in the physical structure of the bridge could have been easily made to avoid a grade crossing; the contour of the surface on each side of the river made the place peculiarly adaptable to an overhead crossing and the court below within the plain intention of the act should, on the evidence, have enjoined the respondents from constructing a cross-

ing at grade.   One of the reasons moving it to make the decree is, that the bridge was nearing completion; there is a contradiction in the testimony on that point which we do not decide ; there is little or no contradiction as to the feasibility and cost of alteration; manifestly, in view of the evidence it was grave error not to enjoin respondents.   The decree was in no real sense a compliance with the true intent and meaning of the act of assembly.

We review the case on the record before us as it stood at the date of the appeal, but while the appeal was pending the whole superstructure of the bridge was swept away by the flood of February, 1904; this is asserted by appellants in their paper-book and admitted by respondents in theirs, so that in the reconstruction of the bridge a change in the height of the piers will probably be all the alteration necessary in the plans.

It is further argued by counsel for the township supervisors that equity is without jurisdiction because the statute gives exclusive jurisdiction by petition to the common pleas in the proceeding there prescribed.   It must be noticed that when the case came before us at Harrisburg and was argued, that for reasons then apparent in the argument on both sides, the statutory proceeding attempted to be put in force had not reached all the proper parties to the issue, nor had it reached the real merits of the issue.   It was aptly remarked by the chief justice in the opinion filed in that case, that the statutory method of proceeding is closely assimilated to a proceeding in equity and he says, " whether we might not take up the case as if on an appeal in regard to an injunction is far from clear," and just whose duty, whether that of the county or the township supervisors, it was, to construct a crossing was also not clear.   He then says: " Under these circumstances we have thought it best, without deciding the other questions, to turn over the appellant to the more plastic and convenient remedy of a bill to enjoin the construction of the bridge."   Whether in the beginning, there might be sought a highway crossing at grade, where the precise statutory proceeding in form pointed out in the act would be held to be exclusive, we do not now decide.   We do hold that under the facts here developed, it is not exclusive in this case.   There are four distinct parties

defendants to this bill, the county commissioners, township supervisors, contractor for the bridge proper, and contractor for the iron superstructure.  The first two have certain duties to perform as public officers ; the second are under obligations as individuals to perform contracts.  In the former proceeding, just what were their respective duties as public officers under the law, or what the obligations of the other two defendants under their contracts was involved in much doubt.  Whether, even if a decree could have been made in a proceeding by petition under the statute and whether it could have reached all, whose rights might have been affected by it was far from clear. The statute does not expressly give exclusive jurisdiction to the law side of the court.  Under such circumstances, we are remitted to well-established rules to determine the jurisdiction. The most comprehensive statement of the rule and the one which has been followed by this court ever since its announcement in 1850 by Judge KING in Bank of Virginia v. Adams, 1 Parsons, 534, is as follows : " To induce equity to refuse its aid to a suitor, it is not sufficient that he may have some remedy at law.  An existing remedy at law to induce equity to decline the exercise of its jurisdiction in favor of a suitor must be an adequate and complete one.  And when from the nature and complications of a given case, its justice can best be reached, by means of the flexible machinery of a court of equity, in short where a full, perfect and complete remedy cannot be afforded at law, equity extends its jurisdiction in furtherance of justice."  Or as Story states in sec. 33, " The remedy at law must be plain ; for if it be doubtful and obscure at law equity will assert a jurisdiction."  Or as this court stated it in Appeal of Brush Electric Co., 114 Pa. 574, " A bill may be sustained solely on the ground that it is the most convenient remedy."  It has also been held that where the remedy is doubtful equity will entertain a bill.

Here were five parties, each one affected, either officially or individually or in its corporate capacity by the proposed grade crossing and each having separate interests, to some extent antagonistic, depending on the evidence ; a comprehensive and just decree could only be made by ascertaining the exact nature of the duties and obligations and rights of each ; the remedy most adequate was clearly in equity.  Equity alone

after full hearing of all the parties could make a proper decree. It would be oppressive and burdensome to hold that plaintiff should institute against each of defendants concerned in the construction of the bridge and crossing, one or more suits at law to stop the work.

But besides the lawful jurisdiction of equity because of the inadequacy and inconvenience of the proceeding by petition under the statute, the objection of respondents to the jurisdiction comes too late. The bill was filed and answer made thereto by each one of the four parties ; no one of them raised a question as to the jurisdiction ; issue was joined and hearing had, preliminary injunction awarded and afterwards dissolved and bill dismissed ; no demurrer was filed. Objection in this case is first made to the jurisdiction in the argument in this court. While objection to the jurisdiction can, generally, be made at any stage of the proceedings, objections to the jurisdiction of equity on the ground that the proceedings should have been instituted on the law side of the court, will not be entertained, unless made within a reasonable time after bill filed. " Whether a case may be brought in the chancery form is only a question of form and not of jurisdiction, and the objection is waived if not made in due season : " 1 T. & H. Pr. sec. 91. " It must be taken advantage of by demurrer and not by objection to the jurisdiction of the court: " Adams v. Beach, 1 Phila. 99. To the same effect are Edgett v. Douglass, 144 Pa. 95 ; Drake v. Lacoe, 157 Pa. 17 ; Shillito v. Shillito, 160 Pa. 167. So that on both grounds we hold that this decree is sound in equity.

As to the parties to the bill, it does not appear that either Charles Reimard, the contractor for the bridge, or the King Bridge Company were at all concerned by their contracts in the grade crossing; their contracts called for only the construction of the bridge and its superstructure. As to them the bill is dismissed ; as to the county commissioners and township supervisors the decree of the court below dissolving the injunction and dismissing the bill, as to them, is reversed ; the bill is reinstated and it is directed that injunction issue enjoining them, their agents and servants from constructing a crossing at grade over the tracks of appellant's railroad. It is further ordered that said county commissioners and township supervisors pay the costs.