# Cumberland Valley Railroad Company's Appeal.

*Railroads—Grade crossings—Establishment of grade crossings— Act of June 7, 1901, P. L. 531—Dangerous crossing.*

1. The Act of June 7, 1901, P. L. 531, forbidding public authorities, except in cities of the first and second classes, to construct a public highway at grade over the tracks of a railroad company, unless permission to do so be obtained from the Court of Common Pleas of the district in which the crossing is situated, is not an enabling act to facilitate the building of highways over railroads at grade, but prohibitory, and public authorities who petition for leave to establish a grade crossing come into court with a heavy burden of proof resting upon them.

2. The fact that a proposed public grade crossing happens to take in a private crossing formerly used by two farmers, does not render the proposed crossing merely a perpetuation of the old private crossing, so as to take it out of the class of crossings covered by the Act of June 7, 1901, P. L. 531, which may be established only in accordance with proceedings taken under section 4 of the act.

3. The supervisors of a township petitioned for leave to build a highway over a railroad at grade. The lower court found that between fifty and sixty trains daily passed the point where the crossing was intended to be constructed, some having a speed of from forty to forty-five miles an hour, others from sixty-five to seventy miles an hour; that the traffic of the road was rapidly increasing, that the land on either side was under cultivation and that at certain seasons growing corn obstructed the view so that the tracks could not be seen by one traveling on the highway, though the smoke from the engines could be seen above the corn; that the cost of constructing an overhead crossing would be $20,000, half of which would be borne by the railroad company.

There was no finding as to the probable amount of travel on the highway which was in course of construction, but the petition for the opening thereof had been signed by one hundred and fifty residents of the township. The lower court concluded as a matter of law that "the amount of traffic" over the road would be small, that the cost of constructing an overhead crossing would be excessive, and granted the prayer of the petition. *Held,* that the crossing would be dangerous to the public, that the cost of constructing an overhead crossing would not be excessive, and that the lower court erred in granting the prayer of the petition, and the decree was reversed.

Argued March 9, 1914.    Appeal, No. 294, Jan. T., 1913, by Cumberland Valley Railroad Company, from decree of C. P. Franklin Co., C. P. Docket, Vol. G, p. 337, granting the prayer of the Petition of the Board of Township Supervisors of Antrim Township, Franklin County, Pa., for permission to establish a Grade Crossing in Antrim Township over the Cumberland Valley Railroad. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Petition for leave to establish a grade crossing. Before GILLAN, P. J.

The opinion of the Supreme Court states the facts.

The court granted the prayer of the petition. The Cumberland Valley Railroad Company appealed.

*Error assigned,* among others, was the decree of the court.

*Walter K. Sharpe,* of *Sharpe & Elder,* and *O. C. Bowers,* for appellant.—The lane followed by the viewers in laying out the new road, was never a public road, and evidence relating thereto is not material to this controversy: Pennsylvania Railroad Co. v. Bogert, 209 Pa. 589.

The Act of June 7, 1901, P. L. 531, was passed to give the Court of Common Pleas jurisdiction to prohibit and regulate new grade crossings; it is now the settled

policy of the State to discourage the further increase of grade crossings: Mifflinville Bridge, 206 Pa. 420; Mifflinville Bridge, 209 Pa. 587; Pennsylvania Railroad Co. v. Bogert, 209 Pa. 589.

*A. J. W. Hutton,* with him *W. J. Patton,* for appellee. —The plain intent of the Act of June 7, 1901, P. L. 531, is to regulate and not to abolish grade crossings.

The lower court acted within its discretion in granting the prayer of the petition: Vaux's Appeal, 109 Pa. 497; Whitemarsh & Springfield Twps. Road, 5 Pa. 101; Youghiogheny River Bridge, 2 Pa. Superior Ct. 265; Toole's App., 90 Pa. 376; Cramer's License, 23 Pa. Superior Ct. 506; Lippincott's License, 44 Pa. Superior Ct. 459; Zion's German Reformed Congregation's App., 1 Mona. 635; Kimber v. Schuylkill County, 20 Pa. 366; Chase v. Miller, 41 Pa. 403; Rand v. King, 134 Pa. 641; Western Allegheny Railroad Co.'s Petition, 233 Pa. 438.

OPINION BY MR. JUSTICE BROWN, April 20, 1914:

The settled policy of the State—no longer merely judicial—is against grade crossings over railroad tracks. By the Act of June 7, 1901, P. L. 531, public authorities, except in cities of the first and second classes, are forbidden to construct a public highway at grade over the tracks of a railroad company unless permission to do so be obtained from the Court of Common Pleas of the district in which the crossing is situated; and such permission must be obtained in the manner provided by the fourth section of the act. It is not an enabling act to facilitate grade crossings of railroads by highways; on the contrary, it is a prohibitory one, and, when public authorities petition for a grade crossing under the provisions of its fourth section, they come into court with a heavy burden of proof resting upon them: Mifflinville Bridge, 206 Pa. 420.

This appeal is from permission granted by the court below to the supervisors of Antrim Township, Franklin

County, to construct a public highway at grade over the double tracks of the Cumberland Valley Railroad Company. In view of the facts found by the court and of an unchallenged averment in the sixth paragraph of the answer of the appellant to the petition of the appellees for permission to construct the crossing, the order authorizing it ought not to have been made. In 1912 a petition, signed by more than one hundred and fifty residents of Antrim Township, was presented to the court of quarter sessions of the county, asking for the appointment of viewers to view and lay out a public road to run from the Hagerstown road to the Williamsport turnpike, two public thoroughfares in the township. The viewers reported in favor of the proposed road, and, after their report had been absolutely confirmed by the court, and an order made for the opening of the road, the supervisors of the township presented their petition, under the provisions of the Act of 1901, asking permission to construct the road at grade over the tracks of the appellant. Between fifty and sixty trains pass daily at the point where the proposed public road crosses the tracks of the railroad company. Most of these are fast freight and passenger trains, the former running at a speed of from forty to forty-five miles an hour and the latter at a speed of from sixty-five to seventy miles an hour. The traffic of the railroad company is rapidly increasing. The land on each side of its tracks where the new public road will cross them is cultivated by farmers, and a finding of the court below is that, when corn grows high in the fields at the point of the proposed grade crossing, the roadbed of the company cannot be seen in approaching the tracks, though smoke from the engines can be seen above the corn. In this latter part of the finding the court below seems to have forgotten that smoke is not visible in darkness or in fog. Though the learned judge failed to find as a fact that the proposed grade crossing will be dangerous, one of his legal conclusions, inconsistent with

the facts which he found, is that the crossing will not be a dangerous one. We are unable to understand how such a conclusion could have been reached in view of the facts to which we have referred. Our conclusion, from a review of what has been brought up on the record, is that the proposed grade crossing will be dangerous and that the court below erred in concluding otherwise.

The Act of 1901 provides that a grade crossing may be constructed if the court having jurisdiction of the matter shall be satisfied that such a construction is reasonably required to avoid excessive expense, in view of the small amount of traffic on the highway. Among the court's findings there is none that the amount of traffic on the highway will be small. True, there is a finding that it is likely to be used only for neighborhood travel, but how extensive that may be does not appear. It does appear, however, that more than one hundred and fifty residents of Antrim Township petitioned for the road, which connects two public highways running parallel to each other, east and west of the railroad, and it may be in view of this that the court below could not have found as a fact that the "amount of traffic" over the road would be small. One of its legal conclusions was that, as the amount of travel on the highway was likely to be small, the expense which would be incurred in constructing an overhead structure would be excessive and almost prohibitory. As just stated, there was no finding as to the probable amount of travel on the highway. It may be large, even if it be likely that the highway will be used only for the neighborhood travel, for many people may live there. More than one hundred and fifty of them set forth in their petition for the road that it was necessary for the accommodation of the public, and the viewers so found. The cost of erecting an overhead crossing will be at least $20,000, as found by the court; but one-half of this will be borne by the railroad company. We cannot concur in the conclusion that the half to be paid by the county will be excessive and ought to

be avoided, in view of the amount of traffic over the new road. The only expense to the township, based upon the interest it will have to pay if it should make a loan to enable it to pay for one-half of the construction of an overhead bridge, will be but five or six hundred dollars a year. The crossing authorized by the court below will, under the circumstances to which we have referred, be a death-trap to the public. Few or many may be caught in it, but, without regard to the number for which the appellees would set it, it was not for the court below to compare and estimate the value of life and limb and weigh that value with a few thousand dollars additional expense to be incurred in erecting an overhead crossing, and call that expense excessive: Pennsylvania Railroad Company v. Bogert, 209 Pa. 589.

The proposed public road will occupy the bed of a private road at the point where it crosses the railroad, and this was given as an additional reason by the court below for permitting the public grade crossing. This private road was for the exclusive accommodation of two farmers, and was their only means of access to a public highway. The public had no rights in it and could not use it, but they need a road to enable them to get from one public thoroughfare to the other, paralleling the railroad, and such road necessarily crosses the railroad tracks. The route adopted by the viewers happened to take in the private road used by the two farmers, which crossed the tracks at grade; but that crossing, which accommodated but two families, has been wiped out by the new road, which is to accommodate the traveling public. The private crossing is not in the case: Pennsylvania Railroad Co. v. Bogert, supra. The crossing in controversy is a new and public one, and not the perpetuation of an old, private one. It was, therefore, a forbidden one under the Act of 1901, unless those who asked for it were able to show that it ought to be permitted under the provisions of the fourth section of that act. This, in our judgment, the appellees failed

to do, and the court below should have so concluded, in the exercise of the discretion vested in it. The order or decree appealed from is reversed, at the costs of the appellees.