# Commonwealth, Appellant, v. Kennedy.

*Nuisance—Public nuisance—Pollution of stream—Discharge of sewage—Act of April 22, 1905, P. L. 260—Equity—Jurisdiction—Injunction—Act of June 16, 1836, P. L. 784.*

1. The drainage of sewage into any flowing stream is a public nuisance.

2. While it is ordinarily true that the public has no interest in a private stream, and the pollution of such stream constitutes nothing more than a private injury, of which only a riparian owner may complain, yet the discharge of sewage into a running stream rests upon an entirely different proposition, in view of the Act of April 22, 1905, P. L. 260. Sewage is the most efficient medium for the dissemination of infecting germs, and as the public health is endangered by the discharge of such germs into a stream, even though a private stream, it cannot be said that riparian owners alone have an interest in the matter.

3. The Act of April 22, 1905, P. L. 260, which declares it to be a misdemeanor, punishable by fine or imprisonment, for any individual, private corporation or company to discharge sewage or permit the same to flow into the waters of the State, does not make all waters of the State as defined in the act public streams, but does subject them to police control, because while not public streams they are susceptible of being turned into public nuisances. In such case the penalty provided by the statute for violation thereof is not exclusive; equity has jurisdiction to restrain such unlawful discharge of sewage as a public nuisance under the fifth clause of the thirteenth section of the Act of June 16, 1836, P. L. 784, extended over the State by subsequent legislation. Such power will only be exercised when the right is clear and the threatened injury is irreparable, but such case is presented by the discharge of sewage into a running stream.

Argued February 11, 1913. Appeal, No. 261, Jan. T., 1913, by plaintiff, from decree of C. P. Chester Co., In Equity, No. 547, dismissing bill in case of Commonwealth of Pennsylvania v. Charles R. Kennedy, individually and as manager of the Devon Sewage Company, Edward T. Stotesbury, individually, and Lawrence T. Paul, Edward T. Stotesbury and Herman Dercum, Trustees, and Frank W. Paul, Edward T. Stotesbury and A. J. Drexel Paul, Executors of the Estate of James W. Paul, Jr., deceased; Herman Wendell, Frederick H. Treat and William T. Hunter, individually, and as president of the Devon Drainage Association, a corporation, and the Devon Drainage Association. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to restrain the discharge of sewage into Darby Creek. Before HEMPHILL, P. J., and BUTLER, J.

The facts are stated in the opinion of the Supreme Court.

The court made a decree dismissing the bill. Plaintiff appealed.

*Errors assigned* were various rulings on facts and law and the decree of the court.

*William I. Schaffer,* with him *Louis J. Palmer, Parker S. Williams, Charles Sinkler* and *John C. Bell,* Attorney General, for appellant.—It has been repeatedly held in the State of Pennsylvania that anything which affects or is injurious to the public health is a public nuisance: Penna. Coal Co. v. Sanderson, 113 Pa. 126; McCallum v. Germantown Water Co., 54 Pa. 40; Com. v. Ashley Boro., 37 Pa. Superior Ct. 254; Goldsmid v. Tunbridge Wells Improvement Commrs., 35 L. J. Ch. (N. S.) 88; McCallum v. Water Co., 54 Pa. 40; Brunner v. Schaffer, 11 Pa C. C. Repr. 550.

Since the passage of the Act of April 22, 1905, P. L. 260, the Supreme Court has held that the discharge of obnoxious sewage into the waters of the State is a matter of public concern and, therefore, a public nuisance: Com. v. Emmers, 221 Pa. 298.

The discharge of sewage into a stream which is likely to become injurious to the public health is not a question of private inquiry, but of grave public wrong: Dixon v. Sheffer, 46 Pa. Superior Ct. 452.

Equity has jurisdiction: Penna. R. R. Co. v. Bogert, 209 Pa. 589; Com. v. Pitts. & Connellsville R. R. Co., 24 Pa. 159; Com. v. Rush, 14 Pa. 186; Stewart's App., 56 Pa. 413; Scheetz's App., 35 Pa. 88; Allison's App., 77 Pa. 221; Anderson v. Lehigh Coal & Nav. Co., 23 Pa. C. C. R. 343; Brotzman's App., 119 Pa. 645; Masson's App., 70 Pa. 26; Walters v. McElroy, 151 Pa. 549; Bussier v. Weekey, 4 Pa. Superior Ct. 69; Keppel v. Lehigh

Coal & Nav. Co., 200 Pa. 649; Blair v. Supreme Council A. L. of H., 208 Pa. 262.

*A. M. Holding,* for appellees.—The Commonwealth cannot maintain this bill because no wrong has been committed against the public except as the same has been declared a wrong by and is to be redressed under the Act of 1905: Sparhawk v. Union Pass. Ry. Co., 54 Pa. 402; Philadelphia v. Lyster, 3 Pa. Superior Ct. 475; Williamsport v. McFadden, 15 W. N. C. 269; Com. v. Yost, 197 Pa. 171; Com. v. Ashley Boro., 37 Pa. Superior Ct. 254; Rhymer v. Fretz, 206 Pa. 230; Bear Gap Water Co. v. Coal Co., 212 Pa. 116; State v. Bergen County, 46 N. J. Eq. 173 (18 Atl. Repr. 465) ; Com. v. Emmers, 221 Pa. 298; Dixon v. Sheffer, 46 Pa. Superior Ct. 452.

Even if otherwise plaintiff were entitled to an injunction, it lost the right thereto by its own laches: Seal v. Northern Central Ry. Co., 1 Pears. 547; Pottsgrove Twp. v. Penna., Etc., R. R. Co., 2 Montgomery County 133.

The remedy of the Commonwealth is exclusively under the Act of 1905: Curran v. Delano, 235 Pa. 478; Dixon v. Sheffer, 46 Pa. Superior Ct. 452; Penna R. R. Co. v. Bogert, 209 Pa. 589; Sears v. Scranton Trust Co., 228 Pa. 126.

OPINION BY MR. JUSTICE STEWART, March 31, 1913:

The facts found by the learned chancellor abundantly establish the jurisdiction of the court to grant the injunction prayed for.    Not only so, but they disclose as well a case which imperatively calls for the application of this extraordinary remedy.    The finding is clear and explicit that the defendants' sewage plant, as at present maintained, allows the escape of sewage into the Darby creek to an extent that renders the waters of the stream unfit for drinking or other domestic uses.    And yet we have the legal conclusion derived by the chancellor that this condition does not constitute a public nuisance; that inasmuch as Darby creek is a private stream in the

sense that the riparian owners along it own ad filum aquæ, the public can have no rights therein, and consequently the pollution of such stream constitutes nothing more than private injury of which only a riparian owner may complain.  True, this court said quite as much with respect to a like stream in Commonwealth v. Yost, 197 Pa. 171, but under very different conditions from those we have here.  In that case a defendant was indicted and convicted of the offense of maintaining and continuing a common nuisance, a cesspool emptying into and connecting with a stream or water-course along which many citizens lived "and from which they obtained water, and from which divers other citizens obtain and are supplied with water for drinking and domestic purposes." The indictment charged that because of the maintenance of this nuisance" the water of said stream was and is impregnated, corrupted and made unwholesome to the great damage and common nuisance of the said citizens, and of all the people of the Commonwealth."  We put our refusal to sustain the conviction of the defendant distinctly on the ground that the only circumstance shown indicating that the offense was a matter of public concern was that a riparian owner, a water company some twelve miles below the point where the sewage entered the stream, without ownership in the running water and, therefore, without right to divert it, was for commercial purposes supplying it for general use. We held that the wrong done by the defendant, if any, was to such riparian owner in depriving it of pure water for its own legitimate purposes, and that any wrong so done was a private one for which the remedy was purely civil.  We did there say that, "If the waters of a stream, in which riparian owners alone have an interest, be polluted, the wrong or injury is a private one."  As an abstract proposition this was entirely correct at the time we said it, and it is equally correct now, except as the State by recent legislation, in the exercise of its police power in the interest of the public, has resumed in one

important particular, and for a definite purpose, its control of all the flowing waters of the Commonwealth, and in consequence, the riparian owners, because of this exercise of power by the State, can no longer be said to be alone interested. It cannot be a matter of public concern that a stream, from which the public are excluded by the riparian owners, has been rendered unfit for domestic use. When this happens the riparian owners alone are injured, and they alone can complain. Water pumped from coal mines and tanneries, if allowed to drain into a running stream, will pollute, and may work serious damage to riparian owners by rendering the water too unclean for domestic use; but so long as the injury is so confined the public is not prejudiced and are without ground of complaint. In all such cases, and many others might be enumerated, it is perfectly correct to say that the riparian owners alone have an interest in the waters of the stream to be protected. But, in view of the recent legislation to which we have referred, the matter takes on an entirely different aspect when it is sewage that is discharged into a running stream. Because sewage is the most efficient medium for the dissemination of infecting germs which do their deadly work in such an infinite variety of insidious ways, not at all dependent upon free access of the public to the stream which the germs pollute, it cannot be said that the "riparian owners alone have an interest in the stream." When this deleterious substance pollutes any running stream the public health is endangered thereby. The infection from which the riparian owner himself may peradventure escape may nevertheless in a hundred ways, through his innocent acts, spread through a community, for he no more than any other lives to himself alone. It was this consideration, as indicated by the title, that led to the passage of the Act of April 22, 1905, P. L. 260, which declares it to be a misdemeanor, punishable by fine or imprisonment, for any individual, private corporation or company to discharge sewage or

permit the same to flow into "the waters of the State." The act defines "waters of the State" to mean, "all streams and springs, and all bodies of surface and ground water, whether natural or artificial, within the boundaries of the State." This does not make all such streams public streams, but it does subject them to police control, because, while not public streams, they are susceptible of being turned into public nuisances. The offense here denounced is against the State, and it is committed whenever sewage is permitted to drain into any surface stream within the Commonwealth. We have attempted to distinguish between Com. v. Yost, decided five years before the enactment of the statute of April 22, 1905, and the present case, only to show that there is nothing in the former that in any way interferes with the exercise of restraining power by the court when the facts are as we have them here.

The learned chancellor was of opinion that the offense committed by respondents was not the maintenance of a public nuisance, for the reason that the stream into which the sewage drained was not a public stream, and being but a violation of a penal statute, the only remedy was to be found in the enforcement of the penalty provided. It is unnecessary to add anything to what we have already said on the first branch of this proposition. We simply repeat that it is not necessary to constitute a public nuisance in running water that the stream should be a public stream. Because the public health is endangered by drainage of sewage into any flowing stream, the legislature has denounced it as an offense on the part of any one permitting it. In no more positive way could it be declared a public nuisance. As to the second, we need only refer to what was said by this court in Bunnell's App., 69 Pa. 59: "It is not to be denied that the Supreme Court and the several Courts of the Common Pleas have jurisdiction to restrain public nuisances, under certain circumstances. This power is conferred by the fifth clause of the thirteenth

section of the Act of June 16, 1836 (P. L. 784), extended over the State by subsequent legislation.  But the power will be exercised only when the right is clear and not doubtful, and when the threatened injury is of a permanent, or an irreparable character.  The mere fact that there is a remedy at law by indictment or action will not alone prevent the exercise of the power, but it is a reason why the jurisdiction of chancery should be confined to cases of a very plain character, where the injury is irreparable and cannot await the slow progress of the legal redress."  No case could be plainer on its facts than the present one.  The learned chancellor was similarly impressed, for in his opinion he distinctly states that he would enjoin the pollution complained of if he had authority to do so.  That he was clothed with ample authority, notwithstanding a remedy at law by indictment existed, sufficiently appears in the case we have cited, which is the only one of many equally explicit. That the injury threatened would be irreparable, in the only proper sense of the term, that is to say, in occasioning damages which could be estimated only by conjecture and not by any accurate standard, Com. v. Pittsburgh, Etc., R. R. Co., 24 Pa. 159, and ought not to be required to await upon the slow progress of the legal redress, is too evident to call for discussion.

For the reasons stated the assignments of error are sustained; the decree dismissing plaintiff's bill is reversed; the bill is ordered to be reinstated, and the court below is directed to enter a decree in favor of the plaintiff enjoining the defendant from maintaining and operating their sewage plant in the place where it is now maintained and operated, in such manner as permits sewage to escape from the said plant and drain and flow into Darby creek or its tributaries.  The costs to be paid by the defendants.