## Commonwealth, Appellant, *v.* Glen Alden Corporation.

Argued January 5, 1965.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*William M. Gross,* Assistant Attorney General, with
him *Joseph L. Cohen,* Assistant Attorney General, *Ed-
ward Friedman,* Deputy Attorney General, and *Walter
E. Alessandroni,* Attorney General, for Commonwealth,
appellant.

*Richard P. Brown, Jr.,* with him *Franklin B. Gelder*
and *William E. Zeiter,* for appellee.

*Louis G. Feldmann,* with him *Anthony J. Ciotola,*
for appellee.

OPINION BY MR. JUSTICE COHEN, May 3, 1965:
This is an appeal by the plaintiff, Commonwealth
of Pennsylvania, from a judgment for defendants, Glen

Alden Corporation and Pennsupreme Coal Company, entered on the basis of the defendants' preliminary objections to the lower court's equity jurisdiction.

The Commonwealth seeks an order requiring defendants to extinguish or remove burning coal refuse piles, allegedly maintained by them. The Commonwealth asserts that they are public nuisances because they release noxious gases which adversely affect the health and well-being of the residents of Ashley and Hanover Townships in Luzerne County. In our opinion, equity has no jurisdiction to inquire into this controversy because of the existence of the Air Pollution Control Act,[1] and, accordingly, the complaint should have been dismissed.

It has been held that equity's jurisdiction to restrain a public nuisance rests upon §1 of the Act of Feb. 14, 1857, P. L. 39, 17 P.S. §283, which extends to all the common pleas courts of the Commonwealth the equity jurisdiction expressly conferred on common pleas courts of Philadelphia County by the Act of June 16, 1836, P. L. 784, §13, 17 P.S. §282, to prevent or restrain "the commission or continuance of acts contrary to law and prejudicial to the interests of the community. . . ." *Commonwealth ex rel. Shumaker v. New York & Pennsylvania Company, Inc.*, 367 Pa. 40, 52, 79 A. 2d 439, 446 (1951) ; *Commonwealth ex rel. v. Soboleski*, 303 Pa. 53, 55, 153 Atl. 898, 899 (1931) ; *Commonwealth v. Kennedy*, 240 Pa. 214, 220-221, 87 Atl. 605, 606 (1913). But we have frequently decided that equity has no jurisdiction to inquire into a controversy where to do so would obviate a statutory procedure provided by the Legislature for its resolution. See, e.g., *Taylor v. Moore*, 303 Pa. 469, 154 Atl. 799 (1931). This salutory result is dictated by the Act of March 21, 1806, P. L.

---

[1] Act of January 8, 1960, P. L. (1959) 2119, §§1 et seq., 35 P.S. §§4001 et seq.

558, 4 Sm. L. 326, §13, 46 P.S. §156 which provides that "[i]n all cases where a remedy is provided, . . . or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued. . . ." Accordingly, if the Air Pollution Control Act, supra, provides a framework for the resolution of the problem involved in Commonwealth's complaint equity may not inquire into the dispute, notwithstanding the fact that the complaint may state a cause of action in public nuisance, traditionally cognizable in equity. Cf. *Collegeville Borough v. Philadelphia Suburban Water Company*, 377 Pa. 636, 105 A. 2d 722 (1954).

The Commonwealth, at the instance of the Secretary of Health, complains that the burning refuse piles maintained by defendants release noxious gases to the detriment of the health and well being of the surrounding residents. The Air Pollution Control Act is designed to regulate this very problem. It defines "air pollution" as "[t]he presence in the outdoor atmosphere of one or more air contaminants in sufficient quantity and of such characteristics and duration which is injurious to human . . . life . . . or which unreasonably interferes with the comfortable enjoyment of life and property . . . throughout such areas of the Commonwealth as shall be affected thereby."[2] Summarizing, the Department of Health is empowered, inter alia, to "[r]eceive and initiate complaints of air pollution in alleged violation of law or any rule or regulation promulgated under this act"[3] and to refer such complaints to a regional association provided for by the Act.[4] If the latter is unable to amicably resolve the problem it refers the complaint to a commission comprised of gov-

---

[2] 35 P.S. §4003(5).

[3] 35 P.S. §4004(3).

[4] 35 P.S. §4006(a), (b)(3).

ernment officers, industry representatives, and experts.[5] The commission is empowered to make rules and regulations, hear and determine complaints regarding their violation, and compel compliance by judicial process.[6] Hearings are required to be held before rules and regulations may be issued,[7] and action by the commission on a complaint must "be in the form of an adjudication . . . subject to the provisions of the Administrative Agency Law. . . ."[8] Aggrieved parties have a right of appeal from any order, decision or determination of the commission in the manner provided by the Administrative Agency Law.[9] From the foregoing we do not hesitate to conclude that the Legislature has provided a statutory method for resolution of the alleged problem set forth in the Commonwealth's complaint, and, therefore, it must be strictly pursued.

An exception to this rule is provided where pursuit of the statutory procedure, in the particular case, would cause irreparable harm. See *Duquesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 339-342, 105 A. 2d 287, 294-295 (1954), *Wood v. Goldvarg,* 365 Pa. 92, 74 A. 2d 100 (1950). The Commonwealth attempts to bring its case within this exception solely on the grounds that the statutory procedure is "cumbersome" and "time consuming." Granting, for the sake of argument only, that this is so the Commonwealth has not related such fact to the necessity for short circuiting the statutory procedure in this case. The fact would be relevant only in the event that the difference between the time required by equity processes to resolve the dispute and, if appropriate, alleviate the problem and the time required by the statutory framework makes

---

[5] 35 P.S. §4005(a), (c).
[6] 35 P.S. §4005(f)(2), (f)(5), (f)(7), §4004(5).
[7] 35 P.S. §4007.
[8] 35 P.S. §4005(f)(5).
[9] 35 P.S. §4005(g).

pursuit of the latter irreparably damaging in the particular case. Moreover, such irreparable damage would have to appear clearly, because to short circuit the statute is to obviate the expertise and procedures which the Legislature considered necessary for the proper resolution of the difficult problems of air pollution. We cannot lightly assume that a case by case, adversary procedure is more suited to the task of conserving and balancing the interests in air use, as envisaged by the Act, than the legislatively prescribed framework.

The Commonwealth places great reliance on *Commonwealth ex rel. Shumaker v. New York & Pennsylvania Company,* supra. There we held that the Pure Streams Act,[10] as amended, did not prohibit equity's inquiry into a complaint of a public nuisance in the nature of water pollution. It is true that there is language in that opinion which might appear applicable to this case,[11] but in *Collegeville Borough v. Philadelphia Suburban Water Company,* supra, we properly refused to follow its implications and limited the holding of *Shumaker* to its statutory grounds, saying at p. 657, "[w]e think it plain that the [*Shumaker*] decision is based upon the express preservation of equitable jurisdiction contained in the Pure Streams Act." The provision of the Pure Streams Act referred to and upon which *Shumaker* was based provides: "It is hereby declared to be the purpose of this act to provide addition-

[10] Act of June 22, 1937, P. L. 1987, as amended, 35 P.S. §§691.1 et seq.

[11] "But even without this provision because of the grave menace to the public interest arising from corruption of waters affecting as it does the health, welfare and comfort of the public, including industries which cannot exist without a plentiful supply of clean water, we have always refused to accept statutes outlawing pollution as restricting the common law right to abate stream pollution." *Shumaker,* supra, at p. 51. This statement was based upon the *Soboleski* and *Kennedy* cases, supra, decided before the enactment of the Pure Streams Act.

al and cumulative remedies to abate the pollution of the waters of this Commonwealth, and nothing in this act contained shall in any way abridge or alter rights of action or remedies now or hereafter existing in equity, or under the common law or statutory law, criminal or civil, nor shall any provision in this act, or the granting of any permit under this act, or any act done by virtue of this act, be construed as estopping the Commonwealth, persons or municipalities, in the exercise of their rights under the common law or decisional law or in equity, from proceeding in courts of law or equity to suppress nuisances, or to abate any pollution now or hereafter existing, or enforce common law or statutory rights." Act of June 22, P. L. 1987, §701, 35 P.S. §691.701.

No such provision appears in the Air Pollution Control Act. Accordingly, the *Shumaker* case is not apposite. Moreover, the absence of such a provision, in light of the similarity of the objects of the two statutes, is a further indication that the Legislature did not desire a dual system of dealing with air pollution.

Nevertheless, the Commonwealth contends that §11 of said Act has the same effect here as the statutory provision relied upon in *Shumaker* and quoted above. It provides: "Nothing in this act shall limit the powers conferred upon the Department [of Health] to control and abate nuisances detrimental to the public health as are provided in Section 2101 of the Administrative Code of 1929, the Act of April 9, 1929 (P. L. 177) as amended." Act of January 8, P. L. (1959) 2119, §11, 35 P.S. §4011.

Section 2101 of the Administrative Code of 1929 provides: "The Department of Health shall, subject to any inconsistent provisions of this act contained, continue to exercise the powers and perform the duties by law vested in and imposed upon the said department, the former bureaus thereof, the Commissioner of Health,

and the Secretary of Health." Act of April 9, 1929, P. L. 177, §2101, 71 P.S. §531.

The power "to control and abate nuisances detrimental to the public health" referred to in §11 of the Air Pollution Control Act and preserved by the §2101 of the Administrative Code is found in §9 of Act of April 27, 1905, P. L. 312, 71 P.S. §1404. This gives the Secretary of Health the power to order the abatement of a nuisance detrimental to the public health and, if the owner or occupant of the premises fails to comply, the Secretary or his agents may enter and abate the nuisance themselves with the ultimate financial burden to be borne by the owner or occupant of the premises or the person who caused or maintained the nuisance. In this light, we fail to perceive the connection between the provision relied upon by the Commonwealth and the preservation of equity's jurisdiction to inquire into this controversy.

The Commonwealth has failed to allege and we see no reason why it should be permitted to short circuit the method provided by the Legislature for resolving the present controversy. Accordingly, the lower court rather than entering judgment for the defendants should simply have entered a decree dismissing the Commonwealth's complaint. See *Collegeville Borough v. Philadelphia Suburban Water Company,* supra.

Judgment vacated with directions to dismiss the complaint.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

Acting through the Secretary of Health, the Commonwealth instituted this equity action alleging that the Glen Alden Corporation and the Pennsupreme Coal Company (Coal Companies), were maintaining, in Ashley Borough and Hanover Township, Luzerne County, a "coal refuse disposal site on which there [are] burning coal refuse piles" and that the "burning coal refuse

piles release noxious gases which constitute a nuisance in that they adversely affect the health and well-being of the residents of the surrounding area", a "nuisance detrimental to public health." The Commonwealth further alleges that the Coal Companies have failed and refused to take any action to abate the release of the noxious gases from the burning coal refuse disposal sites, even though ordered to do so by the Secretary of Health over three and one quarter years ago.

The court below and the majority of this Court now hold, even though the alleged facts must be accepted as true in this posture of the litigation, that equity has no jurisdiction to act because the Air Pollution Control Act[1] furnishes an adequate remedy. With this view I thoroughly disagree and register my dissent.

It is clear beyond question that what the Commonwealth avers is that the Coal Companies are tortiously using the land and maintaining thereon a nuisance inimical and dangerous to the public health. Time and again this Court has recognized that equity has jurisdiction to enjoin the tortious use of land[2] and to abate a nuisance.[3] While the majority opinion, at least impliedly, recognizes such jurisdiction in equity, nevertheless it determines that equity does not have jurisdiction in the case at bar because of the existence of an adequate statutory remedy in the provisions of the Air Pollution Control Act.

In my view, the position taken by the majority of this Court is untenable. I am of the opinion that: (a)

---

[1] Act of January 8, 1960, P. L. (1959) 2119, §§1-15, 35 P.S. §§4001-4015.

[2] Rogoff v. Buncher Co., 395 Pa. 477, 481, 151 A. 2d 83; Emerald Coal & Coke Co. v. Equitable Gas Co., 378 Pa. 591, 107 A. 2d 734.

[3] Rogoff, supra, 395 Pa. at 481; Commonwealth ex rel. Shumaker v. New York & Pennsylvania Co. Inc., 367 Pa. 40, 49, 79 A. 2d 439 and cases therein cited; Hannum v. Gruber, 346 Pa. 417, 31 A. 2d 99; Bethlehem v. Druckenmiller, 344 Pa. 170, 25 A. 2d 190.

the statutory remedy is inadequate; (b) even under the provisions of the Air Pollution Control Act, jurisdiction in equity is preserved for the Secretary of Health; (c) equitable relief is necessary in the case at bar to prevent irreparable damage; (d) equity provides the *only* forum to protect the public health under the instant factual situation.

The majority opinion places reliance principally on *Collegeville Borough v. Philadelphia Suburban Water Company*, 377 Pa. 636, 105 A. 2d 722, and attempts to distinguish *Commonwealth ex rel. Shumaker v. New York & Pennsylvania Co., Inc.*, 367 Pa. 40, 79 A. 2d 439, on the grounds that in *Collegeville* this Court "properly refused to follow [the] implications" of *Shumaker* and limited *Shumaker* to situations where there is an express preservation of equitable jurisdiction. I do not so read *Collegeville*. In *Collegeville*, we stated, 377 Pa. at 657: "Moreover, there is a very great difference between the intervention of a court of equity under the circumstances presented in the Shumaker case to prevent *harm to the public* caused by the pollution of a stream of water, and an intervention which would obstruct or prevent the conservation, control and equitable distribution of the waters of the Commonwealth for the *benefit of the public*—a function properly vested in a legislative agency with State-wide jurisdiction. In the former instance, the court is acting in consonance with the statutorily declared policy and purpose of the Legislature; in the latter instance, contrary to it." In the case at bar, the Commonwealth is attempting to abate a situation which is causing *irreparable harm to the public*.

In *Shumaker*, this Court said that, even without a provision in a statute expressly preserving equitable jurisdiction, "because of the grave menace to the public interest arising from corruption of waters affecting as it does the health, welfare and comfort of the public, . . ., we have always refused to accept statutes out-

lawing pollution as restricting the common law right to abate stream pollution." (367 Pa. at 51). The same rationale is apposite in the instant situation; the grave menace to the public health and welfare arising from the emission of the noxious fumes and gases from these burning coal refuse disposal sites should impel us to entertain jurisdiction in equity despite the Air Pollution Control Act. See also: *Commonwealth v. Kennedy*, 240 Pa. 214, 87 A. 605; *Commonwealth ex rel. v. Soboleski*, 303 Pa. 53, 153 A. 898.

Over 100 years ago in *Bank of Virginia v. Adams*, 1 Parsons 534, the Court said: "And where, from the nature and complications of a given case, its justice can best be reached by means of the flexible machinery of a Court of Equity, in short, where a full, perfect, and complete remedy cannot be afforded at law, equity extends its jurisdiction in furtherance of justice."[4] The officer of the Commonwealth designated to supervise the protection of the public health has found that these burning coal refuse disposal sites are inimical to the health and well-being of the public in the areas involved. The abatement and eradication of this menace to the public health calls for a remedy, immediate and efficacious. The majority of this Court would limit the Secretary of Health to a remedy totally inadequate under the circumstances.

I believe that only equity provides a remedy which can fully and expeditiously determine this situation and protect the public health and well-being. The situation calls for *immediate action* which equity, not the Air Pollution Control Act, can effect.

Mr. Chief Justice BELL and Mr. Justice ROBERTS join in this opinion.

---

[4] This statement was approved by this Court in *Pennsylvania R.R. Co. v. Bogert*, 209 Pa. 589, 601, 59 A. 100, and *Pennsylvania State Chamber of Commerce v. Torquato*, 386 Pa. 306, 329, 125 A. 2d 755.