## Bliss Excavating Company *v.* Luzerne County, Appellant.

Argued April 20, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Peter Paul Olszewski,* Solicitor, with him *Blythe H. Evans, Jr., Sandor Yelen,* and *James Lenahan Brown,* Assistant Solicitors, for Luzerne County, appellant.

*Henry Thalenfeld,* with him *J. Earl Langan, Andrew Hourigan, Jr., Franklin B. Gelder, Joseph I. Reynolds, III, Israel T. Klapper, Theodore R. Laputka, S. Keene Mitchell, Christopher Powell* and *Thomas F. Gill,* for appellees.

448

*Leon Ehrlich,* Deputy Attorney General, for Commonwealth.

OPINION BY MR. JUSTICE COHEN, June 30, 1965:

This is an appeal from a preliminary injunction restraining officers, agents and employees of Luzerne County, inter alia, "from putting into effect or enforcing section 2.05, and its various subsections, of the . . . zoning ordinance of Luzerne County." Section 2.05 and its various subsections regulate the use of land for "Excavation of Sand, Gravel, Coal or Other Minerals and Rock and Peat Moss, for Sale." Plaintiff-appellees are either owners of anthracite coal lands in Luzerne County, which are or may be mined by strip mining methods, or are engaged in the business of strip mining in Luzerne County.

On December 16, 1964, the County Commissioners of Luzerne County resolved to adopt the zoning ordinance, which contains the provisions under attack. The resolution stated that the ordinance was to be effective on January 1, 1965. The ordinance itself, however, provided that it should be effective immediately upon adoption. On the same day that the resolution was passed by the County Commissioners the plaintiffs obtained a preliminary injunction, part of which is set forth above. Plaintiffs alleged that the ordinance was invalid because (1) it was an attempt by the County to legislate on the subject of anthracite strip mining, contrary to the preemption of this subject by the Commonwealth in the Anthracite Strip Mining and Conservation Act of August 13, 1963, P. L. 781, 52 P.S. §681.2, (2) that the zoning provisions of The County Code, Act of August 9, 1955, P. L. 323, §§2020-2039, as amended, 16 P.S. §§2020-2039, do not empower Luzerne County to enact zoning ordinances which purport to regulate the business of anthracite strip mining and (3) that, prior to its adoption, the ordinance

had not been submitted to the State Planning Board for approval, as required by Section 2023(c) of The County Code, supra. They further alleged irreparable harm and the absence of an adequate remedy at law. At the hearing to continue the injunction, held on December 21, 1964, defendant County introduced a petition to dissolve the injunction on the grounds, inter alia, that (1) the ordinance would not be effective until January 1, 1965, (2) that no attempt had been made to enforce the ordinance against the plaintiffs and (3) that plaintiffs had an adequate legal remedy and a statutory remedy which must be pursued. The petition was denied and the preliminary injunction continued until final hearing.

"The scope of appellate review in this type of proceeding is well settled. 'Our uniform rule is that, on an appeal from a decree which refuses, grants or continues a preliminary injunction, we will look only to see if there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable. . . .'

"A preliminary injunction should only be granted where injury is imminent and, if committed, irreparable and will not generally be awarded where the complainant's right is not clear or where the wrong is not manifest. . . ." *Keystone Guild, Inc. v. Pappas*, 399 Pa. 46, 48-49, 159 A. 2d 681, 683 (1960). In our opinion, it is plain that no grounds existed for the grant of the preliminary injunction.

The action was patently premature and amounted merely to an attempt to obtain an advisory opinion. Regardless of when the ordinance became effective, on December 16 or January 1, absolutely nothing had hap-

pened under the ordinance to create a case or controversy ripe for judicial intervention. The plaintiffs had not sought nor had they been denied the right to engage in any activities on their land. Nor had there been any indication or threat of enforcement. "As stated in Knowles's Estate, 295 Pa. 571, 585, 145 A. 797, 'In deciding constitutional attacks upon acts of assembly, the courts do not heed abstract propositions; they deal with actual conditions alone, which must not only affect the one complaining of the alleged unconstitutionality but also must affect him by reason of the particular defect that it is claimed makes the act unconstitutional.' The foregoing principle is equally applicable to attacks upon ordinances. In Knup v. Philadelphia, supra, we recognized that '. . . a court will take jurisdiction . . . only in a case in which a challenged statute, ordinance, or rule of court has been actually applied to a litigant; it does not undertake to decide academically the unconstitutionality or other alleged invalidity of legislation until it is brought into operation so as to impinge upon the rights of some person or persons.' " *Home Life Insurance Company of America v. Board of Adjustment,* 393 Pa. 447, 453, 143 A. 2d 21 (1958).

In *Pittsburgh Outdoor Advertising Co. v. Clairton,* 390 Pa. 1, 133 A. 2d 542 (1957), the City Solicitor notified the company by letter that its signs would have to be removed within two weeks or they would be in violation of the zoning ordinance. The Company filed a bill in equity to restrain the enforcement of the ordinance. When confronted with its failure to pursue its statutory remedy the Company argued that the letter of the City Solicitor was not such a " 'decision of the administrative officer' " as would warrant an appeal to the Board of Adjustment under the applicable statute. Our answer to that argument was as follows: "It may be added here that if we were to accept plain-

tiff's contention that it could not avail itself of the statutory remedy because it had 'nothing from which to appeal', thus reducing the practical effect of the City Solicitor's letter to a nullity, we would have to hold similarly that since the company has not been harmed by an application of the Zoning Ordinance to it, it would have no standing to bring a suit in equity." p. 8.

To demonstrate the dangers of decisions made in vacuo we note that the lower court preliminarily restrained not only the enforcement of the provisions regarding use of land for anthracite strip mining but also the entirely separate provisions regulating use of land for quarries, sand and gravel pits, and peat moss bogs which were in no way involved in the present proceedings.

Besides lack of ripeness, there is another fatal objection to the preliminary injunction. We have consistently held that challenges to zoning ordinances, regardless of the nature of the alleged defect, can be made only within the procedural framework provided by the zoning statutes and ordinances enacted thereunder and equity has no jurisdiction over the subject matter. *Pittsburgh Outdoor Advertising Company v. Clairton,* supra; *Knup v. Philadelphia,* 386 Pa. 350, 126 A. 2d 399 (1956); *Taylor v. Moore,* 303 Pa. 469, 154 Atl. 799 (1931).[1]

The statutory procedure need not be followed only if it is inadequate to the task of resolving plaintiffs' objections or its pursuit will cause them irreparable **harm.** There is no question raised by plaintiffs that cannot be adequately decided at some stage of the ad-

---

[1] With respect to equity's jurisdiction *Duquesne Light Co. v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287 (1954), has been limited by later cases to the peculiar facts of that case. See *Pittsburgh Outdoor Advertising,* supra, at p. 12 and *Baederwood Center, Inc. v. Putney,* 390 Pa. 53, 61-62, 133 A. 2d 836 (1957).

ministrative or judicial proceedings provided for by the ordinance and the statute.[2] Moreover, there may be other questions which the plaintiffs should raise, regarding exceptions or variances, which must, in the first instance, be decided by the administrative authorities within the statutory framework. Thus, one statutory proceeding can be utilized to dispose of all the possible questions and a proper record prepared for appellate review should that be necessary. See Knup v. Philadelphia, supra, at p. 359.

Since all the questions raised by plaintiffs can be decided within the statutory procedure it must be strictly pursued unless plaintiffs can clearly demonstrate that to do so would cause them irreparable injury. Commonwealth v. Glen Alden Corporation, 418 Pa. 57, 210 A. 2d 256 (1965). Considering the ample provisions in the statute and ordinance for the staying of official action to enforce the ordinance, pending resolution of the questions involved, the possibility of irreparable harm is too remote to warrant a preliminary injunction. We will not speculate, as appellees would have us do, that public officials will unfairly administer the provisions granting stays.

The suggestion by plaintiffs that the statutory procedure is "cumbersome and wasteful of time", even if true, does not demonstrate irreparable harm so as to obviate the requirement that legislatively prescribed procedures be strictly pursued. See Commonwealth v. Glen Alden Corporation, supra.

The doctrine that equity may take jurisdiction to avoid a multiplicity of suits is inapplicable. No plaintiff need endure more than one statutory proceeding to resolve all its questions. If the provisions of the ordinance under attack are finally found invalid as

---

[2] Cf. School District of Philadelphia v. Zoning Board of Adjustment, 417 Pa. 277, 207 A. 2d 864 (1965).

to one of the plaintiffs, on the basis of any of the objections set forth above, then they will be invalid as to all the plaintiffs. Further, it is not at all clear from the complaint how many of the numerous plaintiffs are actually subject to the ordinance. This lack of clarity, of course, is a direct result of the lack of ripeness of the controversy.

While we recognize the tremendous interests and conflicts of interests generated by the operations of strip mines and ancillary activities in Luzerne County, nevertheless, courts should act only within their jurisdictional competence upon ripe legal controversies.

Decree vacated with directions to dismiss the complaint.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE EAGEN:

I agree that the instant action was instituted prematurely and that, in the absence of imminent harm, the jurisdiction of equity cannot presently be invoked. However, I am not convinced that equity will not have jurisdiction to enjoin enforcement of the ordinance involved in the foreseeable future. I, therefore, concur in the result reached in the majority opinion.

Whether or not a county has the legal right to legislate in the field of anthracite strip-mining under the guise of zoning regulations is an involved legal question. Admittedly, it can and should be resolved generally within the procedural framework provided by the zoning statutes and pertinent ordinances. But it is reasonably possible that this remedy will be totally inadequate in the present situation.

To litigate finally the important pre-emption question presented through the available statutory process may take months or years. In the meantime, if the county is permitted to enforce the ordinance without restraint, rank injustice and substantial harm would

necessarily follow. Businesses would be seriously interrupted, and many undoubtedly lost. The unfairness of this is patently clear, in view of the fact that it may eventually be determined that the county does not have the power to legislate in the field involved. While the present ordinance does provide that an appeal from an order of the zoning board shall automatically stay all proceedings, it further provides that such will not be the case if the zoning officer certifies that *in his opinion* the stay will cause irreparable harm to life or property. Thus, on the mere certification of the zoning officer and without any judicial determination of the facts, the ordinance can immediately be enforced even though a meritorious appeal is then pending.

While the writer of this opinion is in favor of strict regulations in the field of strip-mining, I cannot agree that the plaintiffs are precluded from seeking equitable relief regardless of the existing circumstances.

Mr. Chief Justice BELL and Mr. Justice ROBERTS join in this concurring and dissenting opinion.