451 A.2d 434

**SHENANGO VALLEY OSTEOPATHIC HOSPITAL, on its own behalf and on behalf of its medical staff and patients,**

v.

**DEPARTMENT OF HEALTH of the Commonwealth of Pennsylvania, Appellants.**

Supreme Court of Pennsylvania.

Argued May 19, 1982.

Decided Oct. 21, 1982.

Joel M. Ressler, Deputy Atty. Gen., for appellants.

Daniel M. Mullholland, III, Barbara Blackmond, John S. Hoff, pro hac vice, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

NIX, Justice.

The Health Care Facilities Act (Act), 35 P.S. § 448.101 *et seq.* was enacted to insure the orderly and economical distri-

bution of health care resources to prevent needless duplication of services and to enhance the health and welfare in this Commonwealth. The Legislature charged the Department of Health (Department) with fostering a sound, coordinated health care system. This litigation concerns the validity of the Department's ruling that a certificate of need must first be obtained by the Shenango Valley Osteopathic Hospital (Hospital) before purchase and use of a Computerized Tomography scanner (C.T. scanner). The principal question on appeal [1] is whether the hospital had a clear right to the special relief from the Department's ruling afforded it by the Commonwealth Court.

The facts, as adduced from the record, reveal that on July 29, 1981 the Hospital entered into a binding contract of purchase for a full body C.T. scanner [2] from Technicare Corporation of Cleveland, Ohio and paid 25% ($67,125.00) of the total purchase price of $268,500.00. The Hospital accepted delivery of the C.T. scanner on August 20, 1981 and made an additional payment leaving a balance of 10% due upon installation. The Act required certificates of need for new institutional health services,[3] including (at that time) capital expenditures in excess of $150,000.00, and/or an operating

1. Jurisdiction to hear this appeal is vested in this Court under 42 Pa.C.S. § 723(a), 42 Pa.C.S. § 5105 and Pa.R.A.P. 311(a)(4).

2. A C.T. scanner is a highly complex piece of medical equipment which merges x-ray and computer technology. It is a diagnostic tool used to study the internal anatomy of the human body in cross-sectional views.

3. The Health Care Facilities Act was adopted in response to Federal Public Law 93–641, which, inter alia, contained a requirement of the existence of a certificate of need program "which applies to the obligation of capital expenditures within the State and the offering within the State of new institutional health services and the acquisition of major medical equipment and which is consistent with standards established by the Secretary [of Health and Human Services] by regulation. A certificate of need program shall provide for procedures and penalties to enforce the requirements of the program." 42 U.S.C.A. § 300m—2(a)(4)(B). Failure to meet the requirements endangers the financial grants available to the Commonwealth under federal health programs as the availability of federal funds is conditioned upon state compliance.

expense in excess of a $82,200 threshold.[4] The Act mandates the filing of a notice of intent prior to the institution of a project for services or the acquisition of equipment which require a certificate of need.[5] On August 4, 1981, the Hospital supplied the Department and Health Systems Inc. of N.W. Pennsylvania with a notice of intent to purchase the C.T. scanner. The notice of intent sent by the hospital did not refer to the contract entered into on July 29, 1980 or the subsequent performance under that contract.

4. CHAPTER 7. CERTIFICATE OF NEED

§ 448.701 Certificate of need required; new institutional health services subject to review

(a) No person shall offer, develop, construct or otherwise establish or undertake to establish within the State a new institutional health service without first obtaining a certificate of need from the department. For purposes of this chapter, "New institutional health services" shall include:

\* \* \* \* \* \*

(2) Any expenditure by or on behalf of a health care facility or health maintenance organization in excess of $150,000 which, under generally accepted accounting principles consistently applied, is a capital expenditure. . . .

(3) The obligation of any capital expenditure by or on behalf of a health care facility which results in the addition of a health service not provided in or through the facility in the previous 12 months . . . .

(4) The addition of a health service which is offered in or through a health care facility having an operating expense in excess of the minimum annual operating expense established in accordance with Title XV of the Federal Public Health Service Act, and which were not offered on a regular basis in or through such health care facility or health maintenance organization within the 12-month period prior to the time such services would be offered.

\* \* \* \* \* \*

(d) As higher minimum expenditures requiring review are set by the Federal Government, those limits shall immediately apply in lieu of the minimum expenditure limits set by this act. 35 P.S. § 448.701

5. The Act requires notice of proposed projects by way of a letter of intent under Section 702(a) of the Act:

§ 448.702 Certificates of need; notice of intent; application; issuance

(a) Projects for facilities, services or equipment requiring a certificate of need shall, at the earliest possible time in their planning, be submitted to the health systems agency and the department in a letter of intent in such detail advising of the scope and nature of the project as required by regulations. 35 P.S. § 448.702(a)

Almost two months later (September 29, 1981), the Hospital sought to withdraw without prejudice its letter of intent. The letter of withdrawal assumed that the new thresholds of $600,000 for capital expenditures and $250,000 for operating expenses established under the federal Omnibus Budget Reconcilation Act of 1981, P.L. 97–35, § 936 (effective October 1, 1981) (Omnibus Act) automatically negated the necessity of a certificate of need review for this transaction. The letter, ignoring the reality that the contract had been entered into and substantially performed prior to the increase of those thresholds, implied that an intended acquisition would be made under the new thresholds. The Department, relying on the facts set forth in the letter of withdrawal, nevertheless contended that the obtaining of a certificate of need was still required under section 701(a)(3), *supra,* relating to a capital expenditure which results in the addition of a health service not provided in the previous 12 months. Moreover, the Department did not address the applicability of the new Omnibus Act thresholds to completed transactions because the Hospital had withheld the fact of its completed purchase of the C.T. scanner. On November 2, 1981 the Department learned for the first time the true facts surrounding the purchase of the scanner.

On November 6, 1981, the Hospital filed an appeal of the Department's reviewability decision with the State Health Facility Hearing Board (Board). On November 19, 1981 the Department notified the Hospital that under the circumstances its acquisition of the C.T. scanner was a violation of the Act and operation of the scanner would be deemed a wilfull violation subject to penalties. On December 17, 1981 counsel for the Department informed the Hospital that in order to cease violating the Act, the Hospital should divest itself of ownership and possession of the scanner or obtain a certificate of need. Thereafter, on January 25, 1982 the Hospital filed an application for a certificate of need and also moved for a continuance of its appeal from the determination of reviewability. The motion for continuance was granted.

On March 1, 1982, while the application for a certificate of need was, and still is, pending, the Hospital filed a petition for review seeking declaratory and injunctive relief. The thrust of the Hospital's constitutional objection was that the delegation of authority to the Department under the Act contravenes Art. 2, Section 1 of the Pa. Constitution, and that the denial of interim use of the C.T. scanner was arbitrary and capricious.

The Hospital requested that the Department be enjoined from enforcing the Act against it with respect to the Hospital's operation of the C.T. scanner and sought the right to use the equipment pending a determination of the issues presented.

On March 15, 1982 the Hospital filed an Application for Special Relief with the Commonwealth Court. A hearing was scheduled for April 13, 1982. Preliminary objections raising a question of jurisdiction, in the nature of a demurrer and a motion to strike on the grounds of impertinency were filed by the Department. No disposition was made of the preliminary objections.

After hearing held on the appointed date, the Honorable David W. Craig entered an order, dated April 14, 1982, (a) authorizing the Hospital to use the C.T. scanner pending final disposition of the certificate of need or petition for review, whichever is later, (b) holding that the operation of the scanner shall not be deemed to be in violation of the Act and (c) enjoining the Department from bringing any enforcement or penalty action based on operation of the C.T. scanner or otherwise interfering with its operation during the pendency of the application or the petition for review. The following day, April 15, 1982, the Department filed a notice of appeal to this Court, which operated as an automatic supersedeas pursuant to Pa.R.A.P. 1736(b).[6] On mo-

6. **Rule 1736. Exemption from Security**

(a) General rule. No security shall be required of:
(1) The Commonwealth or any officer thereof, acting in his official capacity.

\* \* \* \* \* \*

tion of the Hospital, Judge Craig vacated the supersedeas on April 22, 1982.

## I.

█ At the outset, we address the propriety of the Commonwealth Court's exercise of jurisdiction. Appellant questions the Commonwealth Court's exercise of jurisdiction because of the Hospital's alleged failure to exhaust available administrative remedies.[7]

█ A significant factor in considering the appropriateness of judicial intervention is the doctrine of exhaustion of administrative remedies. *Canonsburg Gen. Hospital v. Dept. of Health,* 492 Pa. 68, 422 A.2d 141 (1980); *Delaware Valey Convalescent Center, Inc. v. Beal,* 488 Pa. 292, 412 A.2d 514 (1980). *See, e.g., Commonwealth v. Glen Alden Corp.,* 418 Pa. 57, 210 A.2d 256 (1965); *Collegeville Borough v. Philadelphia Suburban Water Co.,* 377 Pa. 636, 105 A.2d 722 (1954). In *Canonsburg* we stated:

> Well settled case law of this Court precludes a party's challenging administrative decision making from obtaining judicial review, . . ., without first exhausting administrative remedies. . . . Judicial review without either a proper record or an administrative adjudication would

(b) Supersedeas automatic. Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) of this rule shall operate as a supersedeas in favor of such party.

7. Although appellant employed the terminology "the Commonwealth Court lacked jurisdiction," it did not assert the Commonwealth Court was lacking in either subject-matter or personal jurisdiction. Rather appellant's entire argument as to "a lack of jurisdiction" is based upon an alleged failure to exhaust administrative remedies.

Certainly a complaint alleging a cause of action for relief against the Commonwealth derivative from provisions of the federal and state constitutions states a claim within the subject-matter jurisdiction of the Commonwealth Court. 42 Pa.C.S.A. § 761(a). We refrain from committing the fundamental error of confusing the judge-made rule of exhaustion of administrative remedies with subject-matter jurisdiction conferred by the legislature or inherent in the common law. *See, Susquehanna Valley Alliance v. Three Mile Island,* 619 F.2d 231, 245 (3rd Cir. 1980).

constitute "premature interruption of the administrative process." (Citation omitted).

*Id.,* 492 Pa. at 73, 422 A.2d at 144.

The legislature has made it clear that statutorily-prescribed remedies are to be strictly pursued.

In all cases where a remedy is provided, or a duty enjoined, or anything direct to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts in effect.

Act of March 21, 1806, P.L. 558, 4 Sm.L. 326, § 13, 46 P.S. § 156.[8]

The doctrine of exhaustion of administrative remedies as a restraint upon the exercise of a court's equitable powers not only reflects a recognition of the general assembly's directive of strict compliance with statutorily-prescribed remedies, it also acknowledges that an unjustified failure to follow the administrative scheme undercuts the foundation upon which the administrative process was founded. This premise was succinctly set forth in our decision in *T. Mendelson Co., Inc. v. Pennsylvania R.R. Co.,* 332 Pa. 470, 474, 2 A.2d 820, 822 (1938).

The technical nature of the subject, and the peculiar ability of an administrative body to examine it, suffice as a matter of public policy to displace preliminary court action.

The premature interruption of the administrative process restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise and impedes the development of a cohesive body of law in that area. *McKart v. U.S.,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). *See also, Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Parisi v.*

**8.** The Act of 1806 was repealed by the Act of December 6, 1972, Act 290, § 3 and was simultaneously reenacted in substantially the same language. Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1504.

*Davidson,* 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1973). It is therefore clearly appropriate to defer judicial review when the question presented is one within the agency's specialization and when the administrative remedy is as likely as the judicial remedy to provide the desired result. However, a distinctly different situation is presented where the remedy afforded through the administrative process is inadequate. *Feingold v. Bell of Pa.,* 477 Pa. 1, 383 A.2d 791 (1978); *Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974) (plurality opinion); *Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 190 A.2d 111 (1963).

In *Borough of Green Tree, supra,* this Court was unsuccessful in achieving a consensus on the question whether the mere assertion of a constitutional challenge to a statute eliminates the exhaustion of remedies requirement and permits equitable intervention. Nevertheless, it was clear from that decision that four members of this Court agreed the doctrine of exhaustion of remedies would not bar equitable intervention where there are both a substantial question of constitutionality *and* the absence of an adequate statutory remedy. 459 Pa. at 276, 328 A.2d at 819.[9]

Appellee charges that (1) the delegation of authority to the Department under the Act contravenes Art. II, Section 1 of the Pennsylvania Constitution,[10] (2) the Act is too vague as to what constitutes a "violation," "willful violation" or "continuing violation," (3) the Act is too broad as to the discretion vested in the Department to define what specific services are subject to review, including "new institutional health services," (4) there is a vacua as to regulations, and

9. Whether a court of equity should decide a broad constitutional challenge to the validity of a statute irrespective of the existence of a specific statutory remedy is not before us, since, as discussed *infra,* there is an absence of a statutory remedy in this case.

10. Art. II, Section 1 of the Pennsylvania Constitution states:
Legislative power
The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

(5) the Department's denial of the use of the C.T. scanner by appellee and its patients, pending the administrative review process, constitutes arbitrary and capricious action.

The Act does not provide any remedy or appeal process to resolve such issues. The Board's jurisdiction is explicitly set forth.[11] Authority to pass upon the constitutionality of the agency's enabling Act is not mentioned. Nor may it reasonably be inferred. The criteria for membership on the Board ("familiarity and expertise with health care facilities or for relevant training and experience which will assist the board to perform its function," 35 P.S.A. § 448.501), do not support a claim that these challenges could be adjudicated by the Board.[12] The constitutionality of the Board's enabling Act is beyond the agency's jurisdiction.

Moreover, the issues raised by the instant challenges are not within the purview of the expertise of the Board and/or Department and no factual issues requiring the development of a record are present. The participation of the Board or Department at this stage is unnecessary.

To postpone the determination of such serious questions of the statute's constitutionality serves no purpose. We are not here faced with a premature interruption of the administrative process but rather a determination of the constitu-

11. § 448.502 **Powers and duties of the hearing board**
 (a) The hearing board shall have the powers and its duties shall be
 (1) To hear appeals from departmental decisions on applications for certificates of need or amendments thereto.
 (2) To hear upon petition objections to published regulations, criteria, or standards of the health systems agency or department as to the policies therein set forth and where appropriate to request the promulgating agency to reconsider such policies.
 (3) To hear appeals from decisions of the department from which the application arises in matters relating to certificate of need.
 (b) Hearings may be held before one or more members of the board, but action of the board shall be made by majority vote of the board. 1979, July 19, P.L. 130, No. 48, § 502, effective Oct. 1, 1979. As amended 1980, July 12, P.L. 655, No. 136, § 3, effective Oct. 1, 1980, 35 P.S.A. § 448.502.

12. Not surprisingly, appellant does not identify the statutorily-prescribed adequate remedy it urges appellee must utilize to adjudicate the constitutional claims. None exists under these particular facts.

tional validity of the statute which provides the *sine qua non* for the validity of the entire process. The evils of piecemeal judicial intervention in the administrative process are not raised where judicial relief is limited to resolving questions concerning the constitutionality of an enabling act. *Cf. Borough of Green Tree v. Board of Property Assessments, supra,* 459 Pa. at 281, 328 A.2d at 825. *See also, Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 244 A.2d 1 (1968).[13]

Thus, the Commonwealth Court properly did not refrain from exercising its jurisdiction.

## II.

The Department urges that the Hospital failed to establish entitlement to the relief granted pursuant to Pa.R.A.P. 1532(a). It has previously been stated:

> As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that *no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied* will we interfere with the decision of the Chancellor. *Intraworld Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316 (1975); *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.,* 450 Pa. 367, 301 A.2d 816 (1973); *Zebra v. Pittsburgh School District,* 449 Pa. 432, 296 A.2d 748 (1972). "In order to sustain a preliminary injunction, *the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the*

**13.** In *Aircraft & Diesel Corp. v. Hirsch,* 331 U.S. 752, 773, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1946), the Supreme Court formulated that:
[T]he presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention.

*injunction is not granted." Zebra v. Pittsburgh School District,* 449 Pa. at 437, 296 A.2d at 750. (emphasis added). *Roberts v. School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975). (emphasis added). *Bell v. Thornburgh,* 491 Pa. 263, 267–268, 420 A.2d 443, 445 (1980). (Emphasis added.)

■ It is significant that the Court's determination as to "any apparently reasonable grounds" must be predicated upon an independent examination of the record. *Cf. Singzon v. Department of Public Welfare,* 496 Pa. 8, 436 A.2d 125 (1981). And while we recognize the "clear right" requirement does not "mandate that one seeking a preliminary injunction establish [the] claim absolutely," *Fischer v. Department of Public Welfare,* 497 Pa. 267, 271, 439 A.2d 1172, 1174 (1982), the clear right, and appellee so concedes, must be *prima facie* established. *New Castle Orthopedic Assoc. v. Burns,* 481 Pa. 460, 392 A.2d 1383 (1978). The one seeking preliminary relief must be likely to prevail on the merits, and where the right of the party seeking the injunction is not clear, there is no reasonable ground to support the requested grant.

■ Whereas the constitutional issues raised without an administrative forum or procedure to adjudicate them relieved the Commonwealth Court of the exhaustion bar, the claims raised do not establish a sufficient likelihood of success on the merits to have warranted the granting of preliminary relief. *See, Commonwealth v. Forbes Health Systems,* 492 Pa. 77, 422 A.2d 480 (1980).[14]

Moreover, the deleterious effect upon the public interest in the delivery of health services in this Commonwealth by disruption of the administration of the Act indicates that the "interest of justice" does not require the granting of special relief pursuant to Pa.R.A.P. 1532(a). We are mindful of Judge Craig's concern that the C.T. scanner should not stand

14. We note that a federal constitutional challenge to Public Law 93–641 was not upheld. *See, North Carolina ex rel. Morrow v. Califano,* 445 F.Supp. 532 (E.D.N.C.1977) (three-judge court), affirmed 435 U.S. 962, 98 S.Ct. 1597, 56 L.Ed.2d 54 (1978).

idle. However, we recognize that comprehensive health planning seeks to achieve economic and geographic efficacy in the expenditure of capital funds and the assumption of large additional operational costs. It further represents a legislative judgment that the provisions of the Act, in the long run, will be in the best interest of the health and welfare of all the citizens of this Commonwealth. The indiscriminate acquisition of costly, sophisticated medical equipment unnecessarily increases hospital costs and encourages over-utilization of that equipment.

It is to be anticipated that provisions for comprehensive health planning will necessarily, to some extent, curtail the judgment to be exercised by the individual health facilities. The decision to permit this intrusion upon the autonomy of the individual facilities represents a Congressional judgment that such a course of action is in the best interest of the citizens served by those facilities. Our legislature, by participating in the Congressional plan, has concurred in that judgment. *Cf. North Carolina ex rel. Morrow v. Califano, supra.* This is clearly an area of legislative concern and within that body's prerogative to establish the public policy of the Commonwealth in the area. Thus we find no *prima facie* right to relief and no reasonable ground for the granting of the special relief.

Attempts to minimize the magnitude of the question presented in this action by suggesting that it relates only to the short period of time between the actual acquisition of the C.T. scanner and the adoption of the new Omnibus Act thresholds is misleading. It is to be noted that appellant contends that a certificate of need would be required in any event under Section 448.701(a)(3) of the Act. Even assuming that appellee is correct in limiting any possible dereliction to the period prior to the establishment of the new thresholds, the gravity of that dereliction should not be minimized. Moreover, the conduct of appellee throughout the history of this action, such as their lack of candor in

supplying information to the Department regarding the acquisition of the C.T. scanner, is not such as to warrant equitable intervention.

Although the posture of this action in the Commonwealth Court has not reached the stage where appellant must file an answer where affirmative equitable defenses are properly raised, we are compelled to observe that, "He who comes into a court of equity must come with clean hands."

Accordingly, the Order of the Commonwealth Court is hereby vacated and the case remanded.

FLAHERTY and HUTCHINSON, JJ., filed dissenting opinions in which LARSEN, J., joined.

FLAHERTY, Justice, dissenting.

Relying on the reasoning set forth by Judge Craig below, I dissent from the opinion of the majority which serves only to further an inexhaustible bureaucracy at work.

The result reached by the majority requires that a powerful diagnostic tool lay idle while institutional wrangling inches the parties to a final outcome regarding the applicability of the Health Care Facilities Act, 35 P.S. § 448.101 *et seq.*, to the hospital's acquisition of the scanner; this is a condonation of institutionalism in its darkest endeavor and one in which I cannot join.

LARSEN, J., joins this dissenting opinion.

HUTCHINSON, Justice, dissenting.

I agree with part one of the Majority Opinion holding judicial intervention by the Commonwealth Court was appropriate in this case. I dissent from that portion of the majority opinion which holds the Commonwealth Court erred in authorizing the hospital to use the C.T. Scanner pending final disposition of its certificate of need application

or the final disposition of its petition for review seeking declaratory and injunctive relief on constitutional grounds.

As the majority accurately states:

"In order to sustain a preliminary injunction, *the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted.*"

At 439 (citations omitted) (emphasis in original).[1]

The majority also recognized that, the determination as to whether this standard is met is vested in the sound discretion of the Chancellor. *See, supra* at 439. On appeal from a decree granting or refusing a preliminary injunction, the appellant has a very heavy burden to overcome; such a decree will not be interferred with upon appellate review in the absence of a plain abuse of discretion by the court below. *McDonald v. Noga,* 393 Pa. 309, 141 A.2d 842 (1958). If we find the Chancellor's actions were reasonable we do not proceed to a consideration of the merits of the case unless reasons for the action of the court below do not exist or the rules of law relied on are palpably wrong or clearly inapplicable. *Id.* 393 Pa. at 311, 141 A.2d at 843 (citing *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 123 A.2d 626 (1956)). *See Bell v. Thornburgh,* 491 Pa. 263, 420 A.2d 443 (1980); *Intraworld Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316 (1975).

In the present case, the Chancellor, Judge Craig, concluded the purchase price of the C.T. Scanner was below the minimum of $600,000.00 established under the Federal Omnibus Budget Reconciliation Act of 1981 and that while the hospital may be penalized by the Department for purchasing the equipment prior to the federal amendment, it was no longer in violation of Section 35 P.S. 448.701(a)(2) and (d). Moreover, the Chancellor concluded the purchase was not a

1. This is not a mandatory preliminary injunction which commands the performance of some positive act and which requires a much stronger case than that of an injunction which is imposed merely to preserve the status quo. *See Roberts v. School District of Scranton,* 462 Pa. 464, 341 A.2d 475 (1975).

new "health service" within the meaning of 35 P.S. 5448.-701(a)(3).[2]

An injunction may be granted where substantial legal questions must be resolved to determine the rights of the respective parties. *Fischer v. Department of Public Welfare,* 497 Pa. 267, 439 A.2d 1172 (1982); *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 426 A.2d 1123 (1981). This Court need not decide whether the Chancellor's conclusions of law are erroneous at this stage of review. We need only find they were "reasonable". Since I believe his conclusions of law were reasonable, we should dismiss the Department's appeal without further consideration or expression of opinion upon the merits of the controversy as such review is appropriate only after a final hearing and decree in the Commonwealth Court. *See generally* 9 Standard Pa.Practice § 78, p. 393 (1962).

That majority also concludes there is no basis for equitable intervention because the hospital lacks "clean hands." The majority bases its conclusion on inferences drawn from the hospital's notice of intent to purchase the C.T. Scanner filed with the Department on August 4, 1981, in which the hospital failed to mention the contract, and from the hospital's letter of September 29, 1981, withdrawing its letter of intent without notifying the Department the contract had been entered into and substantially performed at that time. The two letters represent the only evidence the hospital deliberately attempted to mislead the Department. Based on these same letters, the chancellor declined to attribute an evil intent to the hospital's actions.

While this Court is able to draw its own inference, deductions and conclusions based on the facts of record, *see W. Penn Twp. School District v. I.B. of E.W.,* 396 Pa. 408, 145 A.2d 258 (1958), I do not believe we should find the Chancellor was unreasonable in reaching a different conclusion.

**2.** "Health service" is defined in the Act as constituting clinically related diagnostic treatment or rehabilitative services. *See* 35 P.S. 448.103. The chancellor determined the C.T. Scanner was merely a new tool for an existing diagnostic and/or treatment service. Commonwealth Court Slip Op. at 3 (filed April 14, 1982).

Finally, although I am troubled by the hospital's unilateral efforts to acquire the C.T. Scanner without a certificate of need prior to the increase in the threshold, the integrity of the statutory scheme could be preserved by the imposition of penalties pursuant to 35 P.S. § 448.603 for the period between July 29, 1981, when the purchase order was signed, until October 1, 1982, the effective date of the increased threshold.

LARSEN, J., joins in this dissenting opinion.